No. 68,212

Rosa Hilda Jurado, individually, and Rosa Hilda Jurado, as next friend of Vonneik Jurado, Allan Fermin Jurado, and Omar Jurado, *Appellants*, v. Popejoy Construction Company and Aetna Life and Casualty Company, *Appellees*.

(853 P.2d 669)

Opinion filed May 28, 1993.

*Richard D. Ralls*, of Wirken & King, of Kansas City, Missouri, argued the cause, and *Cindy Sesler Ballard* and *Deborah A. Polk* were with him on the briefs for the appellants.

*Kendall R. Cunningham*, of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause, and *Tamara L. Davis* and *Michael T. Harris*, of the same firm, were on the brief for the appellees.

*David O. Alegria*, of McCullough, Wareheim & LaBunker, P.A., of Topeka, was on the brief for *amicus curiae* AFL-CIO.

*Kirk W. Lowry*, of Palmer & Lowry, of Topeka, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

*G. Gordon Atcheson*, of Blake & Uhlig, P.A., of Kansas City, was on the brief for *amicus curiae* American Civil Liberties Union.

The opinion of the court was delivered by

DAVIS, J.: This is a workers compensation appeal involving the constitutionality of a statute limiting nonresident alien dependents' death benefits to $750. Under the Workers Compensation Act, all other dependents' death benefits are fixed in an amount not to exceed $200,000. The trial court upheld the constitutionality of the statute. We reverse and remand for further proceedings consistent with our opinion.

On August 21, 1990, 39-year-old Fermin A. Jurado, a resident alien of Mexico, died as a result of massive head injuries he received while working for Popejoy Construction Company (Popejoy) located near Syracuse, Kansas. He had lived and worked in Kansas since 1988. He moved to Kansas to learn English and eventually pursue his profession as an engineer in this country. He had received an engineering degree from the Technological Institute of the City of Juarez in Mexico in 1979. At the time of his death, he was survived by his wife and three children, ages 7, 4, and 2, all of whom were residents and citizens of the

Republic of Mexico. It was his plan to move his dependents to the United States as soon as he had mastered the English language well enough to obtain employment as an engineer.

Upon his death, Aetna Life and Casualty Company issued a check to his dependents in the amount of $750 on behalf of Popejoy, paid pursuant to K.S.A. 44-510b(i), which provides:

"If the [deceased] employee does not leave any dependents who are citizens of or residing at the time of the accident in the United States, the amount of compensation shall not exceed in any case the sum of $750."

All other dependents, including resident alien dependents, are covered by K.S.A. 44-510b(h), which authorizes compensation benefits "not [to] exceed a total amount of $200,000."

In upholding the constitutionality of K.S.A. 44-510b(i), the district court concluded that neither the state nor federal Equal Protection Clauses extend to nonresident aliens. The dependents filed their appeal with the Court of Appeals. On motion, we granted a transfer of the appeal to this court.

While this appeal involves only one issue, the approach used in deciding this issue is of critical importance. A threshold question must first be resolved as to whether our determination involves a consideration of the constitutional rights of the deceased employee, or whether the resolution involves a consideration of the constitutional rights of the employee's dependents. Consistent with the conclusion of the district court, Popejoy urges this court to find that the dependents, as nonresident aliens, are afforded no constitutional protections. Thus, according to its contention, because nonresident aliens have no constitutional rights to advance, the statutory amount awarded must stand. The dependents, however, urge us to consider the constitutionality of this statute based upon the constitutional protections afforded to the resident alien employee.

## Employee's or Dependents' Rights

We begin our discussion with the conclusion that the issue before us does not depend upon the existence or nonexistence of the rights of the dependents but, rather, involves a consideration of the constitutional rights of the resident alien employee, now deceased.

In a recent case decided by the Florida Supreme Court involving almost identical facts, the court concluded:

"However, we do not perceive this case as hinging on the constitutional rights of the surviving dependents, but on the constitutional rights of the worker, now deceased." *De Ayala v. Florida Farm Bureau Cas. Ins.*, 543 So. 2d 204, 206 (Fla. 1989).

In *De Ayala*, a statute similar to ours provided coverage for nonresident alien dependents in an amount up to $1,000, but provided other dependents benefits in an amount up to $100,000. De Ayala was involved in a motor vehicle accident while he was working for a Florida business. The decedent was survived by his dependent parents, wife, and six minor children, all of whom were residents and citizens of the Republic of Mexico. Prior to his death, the decedent had lived and worked in the United States for 25 years. The Florida Supreme Court rejected without any discussion the respondent's contention that, as nonresident aliens, the dependents were not entitled to assert the constitutional principles that form the basis of this action. The Florida Supreme Court merely concluded that the constitutional rights of the surviving dependents did not determine the issue, but the approach must be based on a consideration of the constitutional rights of the worker, now deceased. 543 So. 2d at 206.

Justice Overton's dissenting opinion in *De Ayala* clearly articulates Popejoy's argument that we should focus on the rights of the nonresident alien dependents. Justice Overton states:

"This conclusion that a decedent has constitutional rights has no legal basis. I find the law is clear that a decedent has no constitutional rights. The heirs and beneficiaries, upon the decedent's death, can assert only their own rights—not the rights of the corpse. This principle was aptly stated in J. Gray, *The Nature and Sources of the Law* 38 (2d ed. 1921) as follows:

'Included in human beings, normal and abnormal, as legal persons, are all living beings having a human form. But *they must be living beings; corpses have no legal rights*.' (Emphasis added.)

In *State v. Powell*, 497 So. 2d 1188, 1190 (Fla. 1986), *cert. denied* 481 U.S. 1059, 107 S. Ct. 2202, 95 L. Ed. 2d 856 (1987), this Court agreed with the principle, stating:

'In addressing the issue of the statute's constitutionality, we begin with the premise that *a person's constitutional rights terminate at death*. See *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973); *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743 (10th Cir. 1980), *cert. denied* 454 U.S. 833, 102 S. Ct. 132, 70 L. Ed. 2d 111 (1981); *Guyton*

*v. Phillips,* 606 F.2d 248 (9th Cir. 1979), *cert. denied* 445 U.S. 916, 100 S. Ct. 1276, 63 L. Ed. 2d 600 (1980). *If any rights exist, they belong to the decedent's next of kin.'* (Emphasis added.)" 543 So. 2d at 208, Overton, J., dissenting.

The two basic cases cited by Justice Overton in his dissent do not, in our opinion, provide a sound basis for his conclusion, particularly under the facts of this case. In *Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705, *reh. denied* 410 U.S. 959 (1973), the Supreme Court did not hold that a person's constitutional rights terminate upon death. At most, *Roe v. Wade* held that a fetus that is not yet viable outside the womb is not a person for the purposes of the Fourteenth Amendment. In *Silkwood v. Kerr-McGee Corp.,* 637 F.2d 743 (10th Cir. 1980), *cert. denied* 454 U.S. 833 (1981), the court was considering the plaintiffs' claim that actions after the employee's death violated her civil rights. Under those circumstances, the court held that "the civil rights of a person cannot be violated once that person has died." We have no argument with this conclusion but *Silkwood,* in our opinion, does not provide a firm basis for the conclusion that a worker's constitutional rights, most of which grew out of the employment contract and preexisted his death, terminate upon his death.

Unlike *Silkwood,* we deal with the disparate benefits that accrue to Kansas workers and their dependents as a result of an employment contract and workers compensation laws that preexist a worker's death. Although the death benefit vests after death and is distributed to dependents rather than the worker, the benefit nevertheless arises out of the employment relationship and is part of the benefits package that the worker earned before he died. Thus, as a practical matter, the disparate treatment occurred before Jurado died.

As early as the 1920's, the United States Supreme Court recognized that death benefits serve an *employee's* interest in providing for his or her family. In *Madera Co. v. Industrial Comm.,* 262 U.S. 499, 67 L. Ed. 1091, 43 S. Ct. 604 (1923), the Supreme Court of the United States upheld a provision in the California workers compensation law requiring payment of death benefits to nonresident aliens as against the employer's Fourteenth Amendment challenge. The Supreme Court noted that the es-

sential purpose of workers compensation is to serve the best interests of the employee in seeing that his or her family is protected against the loss of his income. 262 U.S. at 503-04.

*Madera Co.* noted that workers compensation benefits have a quasi-insurance quality in that benefits should go "to those to whom the employee would have naturally have made such insurance payable: to himself, although an alien, if he be disabled; and to those dependent upon his earnings for support, if he be killed." 262 U.S. at 503.

Popejoy argues that the case of *Routh v. List & Weatherly Construction Co.*, 124 Kan. 222, 257 Pac. 721 (1927), clearly states that the Workers Compensation Act creates a right of action for the employee's loss and a separate right of action in the dependents "for their benefit" if the worker dies from the injury. Based upon this case, Popejoy argues that, because a separate independent cause of action exists in the dependents, we should approach their separate case from their rights, not the constitutional rights of the deceased employee.

In *Routh*, the court noted:

"The right of action of dependents does accrue at the time of the accident, and everything must relate back to the situation at that time, but dependents have no standing or independent right of action while the workman is living. After his death they have such right of action, which in that sense does accrue after the death of the workman." 124 Kan. at 227.

While the Kansas Workers Compensation Act separates the two causes of action and creates a separate right of action in the dependents, that right of action is derived from the deceased employee, and everything must relate back to the time of the accident.

In a sense the dependents' action is derivative. Black's Law Dictionary 399 (5th ed. 1979) defines derivative as "[c]oming from another; taken from something preceding; secondary. That which has not its origin in itself, but owes its existence to something foregoing. Anything obtained or deduced from another." In discussing death and disability workers compensation benefits, the United States Supreme Court noted:

"[T]he two kinds of payment are 'always regarded as component parts of a single system of rights and liabilities arising out of' the relation of employer and employee. [Citation omitted.] The object of such acts 'is single—to

provide for the liability of the employer to make compensation for injuries received by an employee,' whether to the employee himself or to those who suffer pecuniary loss by reason of his death. [Citation omitted.]" *Madera Co.*, 262 U.S. at 501.

We consistently have recognized in Kansas that the employment relationship is the source of the workers compensation liability. In *Moeser v. Shunk*, 116 Kan. 247, 251, 226 Pac. 784 (1924), finding that the Workers Compensation Act was the exclusive remedy as between the deceased employee's dependents and the employer, the court noted: "The workmen's compensation law fixed the liability of an employer to his employee where both parties are under the law, and this liability is founded upon the contract of employment and the statute." In *Lyon v. Wilson*, 201 Kan. 768, 774, 443 P.2d 314 (1968), an action by the wife of a deceased employee, we noted: "The liability of an employer to an injured employee arises out of contract between them, and the terms of a statute are embodied in that contract." Finally, in a 1977 action by a deceased worker's dependents, *Baker v. List and Clark Construction Co.*, 222 Kan. 127, 133, 563 P.2d 431 (1977), we held that "[t]he liability of an employer to an injured or *deceased* employee arises out of the contract between them." (Emphasis added.)

To exclude from our consideration the employment contract and the rights of the employee, as Popejoy urges, is to ignore the very nature of the rights conferred under our Workers Compensation Act. The dependents' right of action is derivative of and dependent upon the employee's contract of employment. It exists, if at all, because of the employee-employer relationship, the statutes governing that relationship and benefits conferred, and the contract of employment, all of which preexisted the worker's death. All considerations focus upon the employee and the rights and laws preexisting the employee's death, and we therefore conclude that it is entirely appropriate to approach a determination of constitutionality upon our consideration of the constitutional rights of the employee, now deceased, Fermin Jurado.

### Equal Protection

The Equal Protection Clause of the Fourteenth Amendment

to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14 § 1. Its counterpart, Section 1 of the Kansas Constitution Bill of Rights, provides: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness."

We have long said that the Constitution does not make this court the critic of the legislature, "but rather, the guardian of the Constitution; and every legislative act comes before this court surrounded with the presumption of constitutionality." *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 760, 408 P.2d 877 (1965). Neither the state nor federal equal protection provisions prohibit legislative classifications; equal protection requires, however, that legislative classifications be reasonable, not arbitrary, and that they be justified by legitimate legislative objectives. See, *e.g.*, *Plyler v. Doe*, 457 U.S. 202, 216, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982); *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 774, 830 P.2d 41 (1992); *Farley v. Engelken*, 241 Kan. 663, 668, 740 P.2d 1058 (1987).

This court and the United States Supreme Court have used three basic standards to determine whether a legislative classification violates the right to equal protection of the law. The least scrutiny applied is the "rational basis" test. To pass constitutional muster under the rational basis test, the legislative classification "must bear a rational relationship to a legitimate objective." *Stephenson*, 250 Kan. at 774. See *McGowan v. Maryland*, 366 U.S. 420, 425, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961); *Bair v. Peck*, 248 Kan. 824, 830-31, 811 P.2d 1176 (1991). Courts typically have applied a rational basis test when parties have asserted equal protection challenges to social and economic legislation. See *Leiker v. Gafford*, 245 Kan. 325, 363, 778 P.2d 823 (1989) (applying rational basis test to statutory limitation on wrongful death damages). When this test is appropriate, constitutionality is presumed, and the burden is on the party challenging the statute to prove that no rational basis exists. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 616, 576 P.2d 221 (1978).

The second level of scrutiny may be described as the "substantial relationship" or "heightened scrutiny" test. To be constitutionally valid under this test, "the classification 'must serve

important governmental objectives and must be substantially related to achievement of those objectives.' " *Stephenson*, 250 Kan. at 775. The United States Supreme Court has applied this level of scrutiny to "quasi-suspect" classifications such as those based on sex or legitimacy. See generally *Farley*, 241 Kan. at 669 (citing, *inter alia*, *Pickett v. Brown*, 462 U.S. 1, 76 L. Ed. 2d 372, 103 S. Ct. 2199 [1983], and *Craig v. Boren*, 429 U.S. 190, 50 L. Ed. 2d 397, 97 S. Ct. 451 [1976] [gender]).

The third level of scrutiny, strict scrutiny, requires a showing that "the classification is necessary to serve a compelling state interest." *Stephenson*, 250 Kan. at 775; *Farley*, 241 Kan. at 670. See *Shapiro v. Thompson*, 394 U.S. 618, 634, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969). This strict level of scrutiny applies when fundamental rights are affected or when suspect classifications are involved. See, *e.g.*, *Farley*, 241 Kan. at 669; *Liggett*, 223 Kan. at 617. Although statutes generally come before this court clothed with the presumption of constitutionality, *Londerholm*, 195 Kan. at 760, when a suspect classification or fundamental right is involved, the burden of proof to justify the classification shifts to the proponent of the statute. *Farley*, 241 Kan. at 670; *Liggett*, 223 Kan. at 617.

In this case, we deal with a statutory classification based on alienage. The class of workers that K.S.A. 44-510b(i) singles out for disparate treatment is made up of workers with dependents who are nonresident aliens. Although the statute does not discriminate against employees based on the employees' alienage, it does discriminate against a class of employees based on their dependents' alienage. Workers compensation death benefits serve a dual purpose. First, they serve the employee's interest in assuring that his or her family is protected against the loss of the worker's income. See *Madera Co.*, 262 U.S. at 503-04. They also serve the dependents' interests but, as noted above, the dependents' rights are derived from and dependent upon the employee's right. The two are so intertwined that we cannot separate them for purposes of this constitutional analysis.

K.S.A. 44-510b(i) provides less protection to an employee's dependents on the basis of the dependents' alienage. By doing so, it creates a classification of employees based on alienage even though the classification is not based on the employee's alienage.

Although the benefit limitation applies only to dependents who are nonresident aliens, to suggest that this makes it a classification based on residence is disingenuous. Nonresident United States citizens are entitled to the same benefits as resident citizens and resident aliens. The statute's disparate treatment of these two classes of nonresidents is based solely on alienage. Simply because the statute does not similarly discriminate against resident aliens does not make it any less an alienage classification. In *Nyquist v. Mauclet*, 432 U.S. 1, 8-9, 53 L. Ed. 2d 63, 97 S. Ct. 2120 (1977), the United States Supreme Court applied strict scrutiny to a statute that affected only a subclass of resident aliens. The court determined that the legislative classification was nevertheless based on alienage. K.S.A. 44-510b(i) creates and treats differently a class of employees based on the alienage of the employees' dependents; it is a legislative classification based on alienage.

The United States Supreme Court consistently has held that classifications based on alienage, at least with respect to resident aliens, are suspect and that strict scrutiny applies. See, *e.g., Bernal v. Fainter*, 467 U.S. 216, 219, 81 L. Ed. 2d 175, 104 S. Ct. 2312 (1984); *Graham v. Richardson*, 403 U.S. 365, 372, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971). Such level of scrutiny applies even to resident aliens who are in this country illegally. *Plyler v. Doe*, 457 U.S. at 216-17.

Even though the statutory classification in this case deals with nonresident alien dependents, the alienage-based classification affects resident employees. Thus, the alienage-based classification affects the equal protection rights of resident employees.

## K.S.A. 44-510b(i)

The provisions limiting nonresident alien dependent compensation to an amount of $750 were enacted by the Kansas Legislature in 1911. See L. 1911, ch. 218 § 11. The death benefit ceiling for all other dependents was $3,600 in 1911. However, K.S.A. 44-510b(h) has been amended over the years to the current ceiling of $200,000, representing a 6,150% increase in the amount of death benefits since the statute's inception. In stark contrast, the $750 ceiling in K.S.A. 44-510b(i) has remained static for 81 years.

Popejoy contends that K.S.A. 44-510b(i) will withstand even the strictest scrutiny because a compelling governmental interest necessitates this classification. Popejoy claims that the State would face an "insurmountable task" of administering benefits to citizens of foreign countries, dealing with foreign governments, ascertaining choice of law rules with regard to issues such as marriage and paternity, and insuring dependents received the benefits to which they are entitled. It cites the prevention of fraud and extreme financial hardship on the citizens, employers, and insurance carriers of Kansas as compelling interests that justify the statute's classification.

In response to this contention, it must be noted that the statute allows the nonresident alien dependents to recover some benefits, and the insurers or employers must address these administrative matters. Within a week of Jurado's death, a $750 check was issued to his dependents. Moreover, difficulty of establishing a dependent's entitlement to benefits is not a difficulty of the State. The burden of proof is on the claimant to prove his or her entitlements to any award under the Workers Compensation Act, K.S.A. 1992 Supp. 44-501(a).

To the extent the difficulty of administering benefits qualifies as a compelling interest, it is an interest of the employers or the insurers, not the State. Moreover, under the Kansas Workers Compensation Act, all employers are required to secure payment of workers compensation benefits by either contracting with a private insurance carrier, qualifying as a self-insurer, or maintaining membership in a qualified workers compensation pool. K.S.A. 1992 Supp. 44-532(b). Finally, the contention that administration of benefits would be an "insurmountable task" may have been viable in 1911. However, given the global economy within which we work, the task has become less difficult over the past 80 years.

We conclude that the disparate treatment between employees with nonresident alien dependents and other employees is unconstitutional and violative of the Equal Protection Clauses of both the Kansas and the United States Constitutions. As noted by *De Ayala v. Florida Farm Bureau Cas. Ins.*, 543 So. 2d 204, 207 (Fla. 1989):

"One of the primary benefits that an employee works for is the satisfaction and well-being of providing for his or her family. The law did not afford petitioner's deceased husband different treatment while he was alive and working. He shared the same 'burdens' as his fellow employees. He paid taxes and contributed to the growth of his company and the general economy. His labor, along with that of his American or Canadian co-workers, helped pay for the employer's insurance premiums required under the worker's compensation law. Common sense dictates that he should be entitled to the same 'benefits,' regardless of the residence or status of his dependents. We agree with the California Supreme Court, which in discussing this issue in 1916, held:

> 'If it may reasonably be thought that the best interests of the state, of the employers of labor, and of those employed, as well as of the public generally, are promoted by imposing upon the industry or the public the burden of industrial accident—and some such theory lies at the bottom of all workmen's compensation statutes . . . the residence and citizenship of the injured workman, or (if he shall have met death) of his dependents, are factors entirely foreign to the discussion.' "

As the United States Supreme Court noted in *Madera Co.*:

"Such employers' liability statutes are designed to benefit all employees. [Citation omitted.] They have the interest of the employees in mind and are primarily for the protection of their lives; the action is given to the beneficiaries on their account, and they are not intended to be less protected if their beneficiaries happen to live abroad." 262 U.S. at 504.

### Other Jurisdictions

The workers compensation laws in all but nine states have special provisions for nonresident alien dependents. "Five states expressly include nonresident aliens on equal terms with other dependents; five states exclude them from benefits altogether. Most of the rest provide for reduced benefits or the commutation of benefits to a lump sum on a reduced basis, and many restrict the classes of beneficiaries." 2 Larson's Workmen's Compensation Law § 63.50, at 11-185-86 (1993). We have identified four jurisdictions that have addressed the constitutionality of statutes that treat nonresident alien dependents differently from other dependents. Three upheld the constitutionality of the respective statutes, and one found that the statute was unconstitutional.

In *Alvarez Martinez v. Industrial Com'n of Utah*, 720 P.2d 416 (Utah 1986), the Utah Supreme Court upheld the constitutionality of a statute that limited death benefits payable to nonresident alien dependents to one-half of that to which other de-

pendents would be entitled. Its decision is based upon a consideration of the rights of dependent nonresident aliens. The court concluded that this class of dependents has no constitutional rights based on *Johnson v. Eisentrager*, 339 U.S. 763, 94 L. Ed. 2d 1255, 70 S. Ct. 936 (1950). Unlike *Alvarez Martinez*, we consider the constitutional rights of the worker.

*Pedrazza v. Sid Fleming Con., Inc.*, 94 N.M. 59, 607 P.2d 597 (1980), the Supreme Court of New Mexico upheld the constitutionality of a statute that provided nonresident alien dependents are not entitled to any death benefits. 94 N.M. at 63. In so holding, however, the court also held that because these dependents were "not covered by the Act," they were not barred from pursuing other avenues of recovery. 94 N.M. at 63. Thus, their due process rights under the United States Constitution and the state constitution were not jeopardized because the right to advance an independent cause of action was not taken away. It is true that the *Pedrazza* court held that the right to equal protection extended to only people within the geographic boundary of the state. 94 N.M. at 62 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 30 L. Ed. 2d 220, 6 S. Ct. 1064 (1886), and *Johnson v. Eisentrager*, 339 U.S. 763. We, however, unlike *Pedrazza*, consider the constitutional rights of the worker, not the rights of the surviving dependents.

In *Pena v. Industrial Com'n of Arizona*, 140 Ariz. 510, 683 P.2d 309 (Ct. App. 1984), and *Jalifi v. Industrial Commission of Arizona*, 132 Ariz. 233, 644 P.2d 1319 (Ct. App. 1982), the Arizona Court of Appeals summarily rejected plaintiffs' equal protection challenges to the state statute that allowed nonresident alien dependents to recover 60% of the benefits to which other dependents are entitled. In reaching its conclusion, *Pena*, unlike our approach, based its conclusion on the fact that nonresident aliens are not entitled to equal protection.

Finally, in *De Ayala*, the Florida Supreme Court held unconstitutional a statute that provided $1,000 maximum in death benefits to nonresident alien dependents and $100,000 maximum to all other dependents. The court found the statute violated the worker's constitutional rights to the extent it provided reduced benefits for Florida workers with nonresident alien dependents not living in Canada. 543 So. 2d at 207-08. Based on our analysis

of the above cases and based upon our consideration of the facts and law, we conclude that the provisions of K.S.A. 44-510b(i) are unconstitutional in that they violate Jurado's federal and state constitutional rights to equal protection of law. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

McFARLAND, J., dissenting: I agree with the majority opinion's determination that the result reached in this case depends upon whether the challenges to the constitutionality of the statute are viewed from the perspective of the deceased worker or his dependents. The dependents herein are not now, nor have they ever been, residents of the United States. Accordingly, the dependents have no claims to assert based upon violation of their rights under the Kansas or United States Constitutions. I disagree with the majority's conclusion that the deceased resident alien employee's constitutional rights are the proper perspective from which to determine claims made by the employee's dependents. The majority opinion, in essence, transfers the deceased's constitutional rights, acquired through residency and employment in Kansas, to individuals who have never been subject to the laws or constitutions of Kansas or the United States without, in my opinion, an adequate legal basis for so doing.

As noted in the majority opinion:

"The workers compensation laws in all but nine states have special provisions for nonresident alien dependents. 'Five states expressly include nonresident aliens on equal terms with other dependents; five states exclude them from benefits altogether. Most of the rest provide for reduced benefits or the commutation of benefits to a lump sum on a reduced basis, and many restrict the classes of beneficiaries.' 2 Larson's Workmen's Compensation Law § 63.50, at 11-185-86 (1993)."

Four jurisdictions have considered constitutional claims of disparate statutory treatment to surviving nonresident alien dependents of deceased resident alien employees. The cases, set forth in the majority opinion, are *Pena v. Industrial Com'n of Arizona*, 140 Ariz. 510, 683 P.2d 309 (Ct. App. 1984); *De Ayala v. Florida Farm Bureau Cas. Ins.*, 543 So. 2d 204 (Fla. 1989); *Pedrazza v. Sid Fleming Con., Inc.*, 94 N.M. 59, 607 P.2d 597

(1980); and *Alvarez Martinez v. Industrial Com'n of Utah,* 720 P.2d 416 (Utah 1986). The Utah, New Mexico, and Arizona cases all upheld their respective statutes affording disparate treatment to nonresident alien dependents of deceased resident alien employees. Only Florida, in the *De Ayala* case, opted to transfer the deceased's constitutional rights to the nonresident alien dependents and then strike down the legislation in question on constitutional grounds. The Florida case is hardly a beacon in the darkness which we should follow. It is, at most, a weak candle. The Florida court accomplished the transfer of constitutional rights to the dependents in a summary manner, stating only:

"Respondent initially urges us to find that petitioners, as nonresident aliens, are not entitled to assert the constitutional principles that form the basis of this action. Except for the fact of decedent's residence in Florida, this would be true. *Johnson v. Eisentrager,* 339 U.S. 763, 70 S. Ct. 936, 94 L. Ed. 1255 (1950). However, we do not perceive this case as hinging on the constitutional rights of the surviving dependents, but on the constitutional rights of the worker, now deceased.

"The Florida Constitution expressly provides:

'*All natural persons are equal before the law* and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue happiness, *to be rewarded for industry,* and to acquire, possess and protect property . . . .'

Art. I, § 2, Fla. Const. (emphasis added). The issue in this case is not what petitioners themselves have earned, but what decedent earned during his life here in the state of Florida. This case concerns whether a worker who happens to have dependents residing out of the country is entitled to the same fruits of his or her labor as any other worker, including the same insurance benefits where the state has required those benefits to be provided. It thus is immaterial that petitioners happen to be nonresident aliens, since they have standing in this context as his beneficiaries. Accordingly, we reach the merits." 543 So. 2d at 206.

The Kansas Constitution does not contain a "to be rewarded for industry" provision which was seized upon by the Florida Supreme Court to justify its unique holding.

Reference should also be made to certain Social Security provisions. Dependents of deceased covered workers are entitled to benefits subject to certain conditions. The history of restriction on nonresident alien beneficiaries was discussed in *Ganem v. Heckler,* 746 F.2d 844, 846 (D.C. Cir. 1984), as follows:

"Until recent years, all nonresident aliens were precluded from receiving disability or survivor benefits under the Act. *See* 42 U.S.C. § 402(t)(1). Amendments to the Act passed in 1969 created an exception to this general rule for certain classes of nonresident beneficiaries: if a wage earner has resided in the United States for more than ten years or has earned more than forty quarters of coverage, for example, the wage earner's nonresident beneficiaries retain their eligibility for benefits. Pub. L. No. 90-248, 42 U.S.C. § 402(t)(4)(A) and § 402(t)(4)(B). To receive these benefits, however, the beneficiary must reside in a country which does not have a social insurance scheme that discriminates against Americans."

Thus, Social Security nonresident beneficiaries have always been subject to varying disparate treatment.

I believe the majority has improperly transferred the deceased resident alien's constitutional rights to the nonresident alien dependents to defeat the statute and to reach a result which may be perceived as "fair" or "socially desirable." However, such arguments are properly addressed to the legislature. It is axiomatic that a statute is presumed constitutional and all doubts must be resolved in favor of its validity. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 834 P.2d 368 (1992). Our judicial responsibility is to determine whether the legislature could constitutionally enact this legislation.

I would uphold the statute and affirm the district court.

SIX, J., joins in the foregoing dissenting opinion.