(873 P.2d 214)
No. 70,068

PATRICK RILEY, Deceased, *Appellant*, v. NATIONAL MILLS, INC., HARTFORD ACCIDENT & INDEMNITY, and KANSAS WORKER'S COMPENSATION FUND, *Appellees.*
Petition for review denied 255 Kan. 1003 (1994).

Opinion filed April 29, 1994.

*Robert S. Tomassi* and *Reina Holtman*, of Loy, Loy & Tomassi, P.A., of Pittsburg, and *Frederick R. Smith*, of Pittsburg, for appellant.

*Leigh C. Hudson*, of Hudson & Mullies, of Ft. Scott, for appellee Kansas Workers Compensation Fund.

*Bill Wachter*, of Wilbert and Towner, P.A., of Pittsburg, for appellees National Mills, Inc., and Hartford Accident & Indemnity.

Before BRISCOE, C.J., LARSON and ROYSE, JJ.

LARSON, J.: In this workers compensation case, the mother, brother, and sisters of Patrick Riley, deceased, appeal, contending K.S.A. 1992 Supp. 44-510b is unconstitutional because it violates the Equal Protection Clause of the 14th Amendment to the United States Constitution and the Due Process Clause of § 18 of the Kansas Constitution Bill of Rights.

This is a companion case to *Karhoff v. National Mills, Inc.*, 18 Kan. App. 2d 302, 851 P.2d 1021 (1993), in which we held an attempt by the heirs of Riley to bring a wrongful death action against his employer, National Mills Inc., was barred because the exclusive remedy was workers compensation. We specifically held that K.S.A. 1992 Supp. 44-501(b) and K.S.A. 1992 Supp. 44-510b do not violate § 18 of the Kansas Constitution Bill of Rights. 18 Kan. App. 2d 302, Syl. ¶ 7.

The claimants here were the appellants in *Karhoff*. The due process argument they raise here was resolved against them in *Karhoff*. That decision is a final and binding resolution of the due process issue. It will not be considered here.

The facts are undisputed. Riley's death arose out of and in the course of employment with National Mills, Inc. This required his employer and its insurance carrier, Hartford Accident & Indemnity, to be responsible for payment of the statutory workers compensation benefits.

These benefits were the payment of Riley's medical expenses pursuant to K.S.A. 1992 Supp. 44-510(a); statutory burial allowance of $3,200 under K.S.A. 1992 Supp. 44-510b(f); and, pursuant

to K.S.A. 44-570, the payment of $18,500 to the Commissioner of Insurance to the credit of the Workers Compensation Fund because there were no dependents entitled to compensation.

The claimants' equal protection argument is that K.S.A. 1992 Supp. 44-510b is unconstitutional because it provides a remedy for an employee with dependents, but does not provide a like remedy for an employee without dependents. The claimants theorize that although Riley would have been entitled to benefits equal to any other worker had he been injured, his heirs are denied any remedy as a result of his death. They argue he should be treated equally with other employees regardless of his marital status, lack of children, or lack of dependents.

The claimants contend there is no rational basis for this disparity in treatment and that the State of Kansas has no right to compensation as a result of Riley's death when his family or heirs receive nothing. Claimants contend they should be entitled to receive $200,000 under the Workers Compensation Act.

It should be noted that if the claimants were in fact Riley's dependents (and they have specifically not disputed the factual finding made by the ALJ and upheld by the Director that the mother, brother, and sisters are not dependents), the most they could have received under the statutory scheme would be $18,500. See K.S.A. 1992 Supp. 44-510b(a)(4) and (d).

The Kansas Workers' Compensation Handbook § 8.03, p. 8-1 (rev. ed. 1990) teaches us that "[t]he payment of compensation in a death case is limited to those persons who qualify as dependents." See also 2 Larson, Workmen's Compensation Law § 62.00 *et seq.* (1994) (the analysis of almost all dependency cases is a weighing of two factors: claimant's compliance with statutory requirements of relationship to the deceased and dependency in fact).

We have held for many years in Kansas that our compensation act creates a right in the injured worker for the loss resulting from the injury and also creates a distinct and separate right of action in the dependents of the worker in the event death results from the injury. *Routh v. List & Weatherly Construction Co.,* 124 Kan. 222, 257 Pac. 721 (1927). Heirs of the recipient of an award are not entitled to any property interest in the award. 1 Larson, Workmen's Compensation Law § 2.60 (1993). We thus

begin our discussion with the clear understanding that the benefits to an employee and the benefits to the employee's dependents are separate and distinctly different rights.

The longstanding, well-established, and often-cited rules that govern an appellate court's review of the constitutionality of a statute are set forth in *Tri-State Hotel Co. v. Londerholm*, 195 Kan. 748, 760, 408 P.2d 877 (1965):

"This court is by the Constitution not made the critic of the legislature, but rather, the guardian of the Constitution; and every legislative act comes before this court surrounded with the presumption of constitutionality. That presumption continues until the Act under review clearly appears to contravene some provision of the Constitution. All doubts of invalidity must be resolved in favor of the law. It is not our province to weigh the desirability of social or economic policy underlying the statute or to question its wisdom; those are purely legislative matters."

The Equal Protection Clause of the 14th Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." Its counterpart, § 1 of the Kansas Constitution Bill of Rights, provides: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness."

Equal protection emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable. *Ross v. Moffitt*, 417 U.S. 600, 609, 41 L. Ed. 2d 341, 94 S. Ct. 2437 (1974); *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 613, 576 P.2d 221 (1978). In this case, we believe there is clearly a difference between heirs and family members who are dependent on a worker for support and the mother, sisters, and brother who were *not* dependent on Riley.

" 'Unless a provision draws a classification which implicates fundamental personal rights or is based upon an inherently suspect distinction such as race, religion, or alienage, the classification will be upheld unless it can be shown that the classification is not rationally related to a legitimate state interest.' " *Blue v. McBride*, 252 Kan. 894, 913, 850 P.2d 852 (1993) (quoting *Detroit Automotive Purchasing Services v. Lee*, 463 F. Supp. 954, 971 [D. Md. 1978]).

Examination of the relationship between the classification and the legislative objective has developed into three levels of scrutiny. The various levels of scrutiny were described in *Farley v. Engelken*, 241 Kan. 663, 669-70, 740 P.2d 1058 (1987), with the least strict level of scrutiny being referred to as the "rational basis" test, the intermediate level as "heightened scrutiny," and the highest level as "strict scrutiny." The standard of scrutiny increases with the perceived importance of the right or interest involved and the sensitivity of the classification.

The rational basis test is defined in *McGowan v. Maryland*, 366 U.S. 420, 425, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961), where it was stated:

" '[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' "

To pass constitutional muster under the rational basis test, the legislative classification must "bear a rational relationship to a legitimate objective." *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, 774, 830 P.2d 41 (1992). Kansas appellate courts have applied a rational basis test when parties asserted equal protection challenges to social and economic legislation. See, *e.g., Peterson v. Garvey Elevators, Inc.*, 252 Kan. 976, 981-82, 850 P.2d 893 (1993) (rational basis test applied to statute that discriminates between claimants and respondents who enter into lump sum settlement approved by ALJ in workers compensation matters and claimants and respondents who do not); *Stephenson v. Sugar Creek Packing*, 250 Kan. at 779 (provisions of Workers Compensation Act challenged on equal protection grounds and rational basis test applied); *Bair v. Peck*, 248 Kan. 824, Syl. ¶ 6, 811 P.2d 1176 (1991) (traditionally, the yardstick for measuring equal protection arguments has been the rational basis test); *Leiker v. Gafford*, 245 Kan. 325, 363, 778 P.2d 823 (1989) (rational basis test applied to statutory limitations on wrongful death damages; "reasonable basis" or "rational basis" test traditionally has been

applied where equal protection challenges have been brought against social and economic legislation).

The definitions and usage of the second and third levels of scrutiny are described in *Jurado v. Popejoy Constr. Co.*, 253 Kan. 116, 123-24, 853 P.2d 669 (1993), where it was held:

"The second level of scrutiny may be described as the 'substantial relationship' or 'heightened scrutiny' test. To be constitutionally valid under this test, 'the classification "must serve important governmental objectives and must be substantially related to achievement of those objectives.'" *Stephenson*, 250 Kan. at 775. The United States Supreme Court has applied this level of scrutiny to 'quasi-suspect' classifications such as those based on sex or legitimacy. See generally *Farley*, 241 Kan. at 669 (citing, *inter alia*, *Pickett v. Brown*, 462 U.S. 1, 76 L. Ed. 2d 372, 103 S. Ct. 2199 [1983], and *Craig v. Boren*, 429 U.S. 190, 50 L. Ed. 2d 397, 97 S. Ct. 451 [1976] [gender]).

"The third level of scrutiny, strict scrutiny, requires a showing that 'the classification is necessary to serve a compelling state interest.' *Stephenson*, 250 Kan. at 775; *Farley*, 241 Kan. at 670. See *Shapiro v. Thompson*, 394 U.S. 618, 634, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969). This strict level of scrutiny applies when fundamental rights are affected or when suspect classifications are involved. See, *e.g.*, *Farley*, 241 Kan. at 669; *Liggett*, 223 Kan. at 617. Although statutes generally come before this court clothed with the presumption of constitutionality, *Londerholm*, 195 Kan. at 760, when a suspect classification or fundamental right is involved, the burden of proof to justify the classification shifts to the proponent of the statute. *Farley*, 241 Kan. at 670; *Liggett*, 223 Kan. at 617."

We hold that the rational basis test is the appropriate measure of equal protection in this case. The claimants' assertion that a non-dependent heir should be treated in the same manner as dependents raises the question of whether denying benefits to a non-dependent bears a rational relationship to a legitimate State objective. We hold it is a legitimate State objective to see that an injured worker and heirs dependent upon the worker for their support and maintenance will not become burdens upon the public, but no such objective exists as to heirs who were not dependent upon the worker.

The underlying social philosophy behind workers compensation is the belief in the wisdom of providing in the most efficient, most dignified, and most certain form financial and medical benefits for the victims of work-connected injuries which an enlightened community would feel obligated to provide in any case in

some less satisfactory form and of allocating the burden of those payments to the most appropriate source of payment, the consumer of the product. 1 Larson, Workmen's Compensation Law § 2.20 (1993). The award of workers compensation benefits has historically been utilized to provide support and maintenance to an injured worker and those directly dependent upon such worker.

The historical development of workers compensation benefits in Kansas follows the national pattern. From the statutory language in 1911 to the wording in the present case, no payments have been required in cases where death results from the injury unless the heirs of the deceased worker were dependent upon the worker for support. "Dependents" in the initial act were defined as "such members of the workman's family as were wholly or in part dependent upon the workman at the time of the accident." L. 1911, ch. 218, § 9(j). The definition identical in meaning is contained in K.S.A. 44-508(c)(1): " 'Dependents' means such members of the employee's family as were wholly or in part dependent upon the employee at the time of the accident."

While there is not any statutorily stated purpose for denying benefits to non-dependent heirs, the classification must be upheld if the difference in the status is based upon need and necessity of the heirs. We hold that it is.

Riley does not have an equal protection right to support family members after his death when he did not support while he was alive. Our statute reasonably distinguishes between individuals who were dependent upon a deceased employee's income and those who were not.

Claimants argue they are entitled to the relief requested herein because of the holding of the Kansas Supreme Court in *Jurado*, 253 Kan. 116. In *Jurado*, our Supreme Court held that denying death benefits to nonresident aliens who were dependent upon the deceased worker violated the constitutional equal protection requirements. The court focused on the contractual rights between the worker and his or her employer, rather than the rights of those dependent upon the worker, and a level of strict scrutiny was applied to a classification based on alienage. We find that *Jurado* is factually different because it involved a surviving wife

and children who were dependent upon the worker, while in this case the claimants are not dependents.

There *is* wording in *Jurado* which supports our decision herein. Justice Davis, writing for the majority, noted that "death benefits serve an *employee's* interest in providing for his or her family," and "the essential purpose of workers compensation is to serve the best interests of the employee in seeing that his or her family members are protected against the loss of his income." 253 Kan. at 120-21. In our case, the family was not utilizing any of Riley's income and, despite the tragic loss of a family member and the heartache and grief it brings, Riley's family members are in the same financial condition as they were before his death. They do not need to be protected against the loss of his income.

The Workers Compensation Act is social legislation designed to protect workers and their dependents. The purpose of paying death benefits under the Workers Compensation Act is to protect persons dependent upon the deceased employee's income. The legislature's differentiation between those who are dependent and those who are not serves a reasonable legitimate State objective. It is a rational and reasonable plan to require that dependents receive compensation as a result of a worker's death and to deny benefits to those whom an employee did not support while the employee was living.

Affirmed.