NOT DESIGNATED FOR PUBLICATION

No. 117,493

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDWARD C. FRANKLIN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed December 29, 2017. Affirmed.

*Edward C. Franklin*, appellant pro se.

*Jon S. Simpson*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BUSER, J., and BURGESS, S.J.

PER CURIAM:  The Pawnee County District Court summarily dismissed Edward Franklin's habeas corpus petition challenging his confinement at Larned State Hospital for treatment as a sexually violent predator. On appeal, Franklin outlines various claims he asserts violated due process and equal protection rights guaranteed him in the Fourteenth Amendment to the United States Constitution. Because Franklin neither defines viable constitutional claims nor shows the district court somehow erred in its ruling, we affirm the dismissal.

1

FACTUAL AND PROCEDURAL BACKDROP

The record on appeal is thin. We principally have Franklin's petition filed under K.S.A. 60-1501, the State's answer, and the district court's memorandum decision and order denying relief. Franklin has represented himself throughout the habeas corpus proceedings, including this appeal. The facts underlying Franklin's commitment pursuant to the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 et seq., may be gleaned from two earlier opinions of this court—the first reversing a jury verdict finding Franklin to be a sexually violent predator and the second affirming a like verdict (without reversible error) in a retrial. See generally *In re Care & Treatment of Franklin* (*Franklin II*), No. 101,764, 2011 WL 767885 (Kan. App. 2011) (unpublished opinion) (affirming civil commitment on retrial), *rev. denied* 293 Kan. 1106 (2012); *In re Care & Treatment of Franklin* (*Franklin I*), No. 97,650, 2008 WL 2051733 (Kan. App. 2008) (unpublished opinion) (reversing and remanding Franklin's civil commitment for a new trial).

In 1979, Franklin was convicted in Texas of raping a 16-year-old girl. In 1994, he was convicted in Kansas of aggravated indecent liberties with a 13-year-old girl and of attempting to rape the same girl. *Franklin II*, 2011 WL 767885, at *1. In 2004, while Franklin was still in prison on sentences for the Kansas convictions, the State filed a petition for involuntary commitment of Franklin as a sexually violent predator. A jury found Franklin met the statutory criteria for a sexually violent predator, and the district court entered an order involuntarily committing him to the treatment program at the state hospital in Larned. Franklin appealed, and this court remanded the case for a new trial because the psychologist who testified about Franklin's mental condition impermissibly detailed the pretrial review process culminating in the commitment trial, thereby prejudicially tainting the jury's independent review of the admissible evidence. *Franklin I*, 2008 WL 2051733, at *2-3.

2

Because Franklin had been involuntary committed for a significant period of time before the retrial, the district court entertained extensive discussions about what evidence the second jury would be permitted to consider. Franklin's lawyer argued *against* permitting Franklin's treating psychologist at Larned to testify because it would inevitably suggest that Franklin had been committed for the past few years. *Franklin II*, 2011 WL 767885, at *2. Much of the evidence in the second trial involved Franklin's past conduct. But the district court permitted Franklin's current treating psychologist to testify about his professional contact with Franklin, his familiarity with the KSVPA, and his opinion whether Franklin met the statutory criteria for involuntary commitment under the Act. *Franklin II*, 2011 WL 767885, at 3. The second jury also found Franklin to be a sexually violent predator. *Franklin II*, 2011 WL 767885, at 4.

Franklin again appealed his involuntary commitment, raising essentially four issues. He challenged the admission of an independent mental evaluation report, but this court refused to address the claim because Franklin did not designate a record affirmatively demonstrating error. *Franklin II*, 2011 WL 767885, at *4-6. He challenged the sufficiency of the State's evidence, but this court found the evidence sufficiently supported the jury's verdict. *Franklin II*, 2011 WL 767885, at *6-7. Franklin argued certain evidence was improperly admitted. This court found no reversible error on the evidentiary issues. *Franklin II*, 2011 WL 767885, at *7-11. Franklin challenged his commitment proceedings on the basis of prosecutorial misconduct, but this court found no prosecutorial misconduct. *Franklin II*, 2011 WL 767885, at *11-12. The court affirmed Franklin's involuntary commitment.

On March 26, 2012, Franklin filed his 60-1501 petition. He raised multiple claims challenging the commitment proceedings in *Franklin II*, many of which contained overlapping arguments. The State filed an answer essentially arguing Franklin raised trial errors he should have asserted on direct appeal. The State also argued Franklin's issues had no substantive merit. The district court neither appointed a lawyer for Franklin nor

3

held a hearing on his 60-1501 petition. On December 20, 2012, the district court filed its memorandum decision denying Franklin's petition. This court granted Franklin leave to perfect his appeal out of time.

LEGAL ANALYSIS

*Overview and General Principles*

A person who is detained, confined, or restrained of liberty by the State may petition the court for a writ of habeas corpus. K.S.A. 60-1501(a). A habeas corpus petition under K.S.A. 60-1501 must allege shocking or intolerable conduct or mistreatment of a constitutional stature. If the face of the petition or the incontrovertible facts of the case fail to allege such circumstances, the petition may be summarily dismissed. *Bankes v. Simmons*, 265 Kan. 341, 349, 963 P.2d 412 (1998); *Corter v. Cline*, 42 Kan. App. 2d 721, 722, 217 P.3d 991 (2009). When a district court summarily dismisses a 60-1501 petition, we review the decision as a matter of law and afford no deference to the ruling. See *Johnson v. State*, 289 Kan. 642, 649, 215 P.3d 575 (2009).

In his appellate brief, Franklin largely recasts the challenges to his involuntary commitment as a sexually violent predator. So what we have in front of us bears only a limited resemblance to the specific claims Franklin pressed in his 60-1501 petition. And some of the points in his brief are difficult to follow as purported constitutional violations. Franklin seems to tacitly recognize he has raised issues for the first time on appeal, since he cites the limited grounds on which an appellate court may consider new points.

For his first issue, Franklin contends that his confinement (and continued treatment) at Larned Hospital between this court's decision in *Franklin I* and his transfer to the Wyandotte County jail in anticipation of his second trial violated a constitutionally

4

protected liberty interest without procedural due process. He next challenges the district court's authority to retry him as a sexually violent offender in 2008 because he was no longer serving a criminal sentence for a sexually violent offense. Third, he contends that the district court erred in holding a probable cause hearing before the retrial because the State never filed a new petition for his involuntary commitment. Next, he says the district court failed to order a statutorily required mental examination of him before the retrial, as provided in K.S.A. 59-29a05(d). For his fifth and sixth issues, Franklin argues the district court erred in summarily denying his petition for habeas corpus relief, essentially repackaging the other issues as generic due process violations and as constitutionally impermissible "shocking and intolerable conduct." Finally, Franklin alleges that his involuntary commitment denied him equal protection under the law as compared to other sexually violent predators committed through the KSVPA.

Although we question whether Franklin's claims properly should be considered on appeal because of their deviation from what he submitted to the district court in his 60-1501 petition, we pass over any procedural bars to look at the substance of the claims as they have been framed in the appellate briefing. Even with that accommodation, Franklin has not presented grounds warranting relief from the involuntary commitment imposed in *Franklin II*.

We offer some general principles applicable to constitutional due process protections. Involuntary commitment constitutes a significant deprivation of an individual's liberty interest that demands the protection of due process of law. See *In re Care & Treatment of Sykes*, 303 Kan. 820, 824, 367 P.3d 1244 (2016); accord *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979). The fundamental requirement of due process is a fair hearing with an impartial tribunal. *In re Care & Treatment of Hay*, 263 Kan. 822, 831, 953 P.2d 666 (1998). In that sense, as outlined by the United States Supreme Court, constitutionally protected procedural due process requires that a person be afforded a right to be heard in a meaningful way before being

5

deprived of "life, liberty, or property." U.S. Const. amend. XIV, § 1; *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]"); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). The procedural protections provided in the KSVPA for involuntary commitment actions satisfy constitutional due process. They afford a person subject to the proceedings the right to appointed counsel, a probable cause determination, appointment of qualified experts for examination, a jury trial permitting the cross-examination of the State's witnesses, and the opportunity to present evidence. The State must prove its case for involuntary commitment beyond a reasonable doubt and obtain a unanimous jury verdict. See *Kansas v. Hendricks*, 521 U.S. 346, 353, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997); *Hay*, 263 Kan. at 831.

*Franklin's Confinement Pending Second Trial*

Franklin contends that he was denied due process by being confined and treated at Larned Hospital between the time this court reversed the jury verdict and judgment finding him to be a sexually violent offender and his transfer to the Wyandotte County jail for a retrial. According to Franklin, he was improperly held at the hospital for almost three months from early May to late July 2008. The duration may be nearer two months, measured from the issuance of the mandate in *Franklin I*.

Franklin may be correct in the sense he should have been held in jail rather than the hospital after this court's decision in *Franklin I* became final. The ruling reversed the judgment committing him to the hospital for treatment as a sexually violent predator, so his confinement there may have been without authority. But a person subject to a petition

6

for adjudication as a sexually violent offender must be held in jail upon a district court's probable cause finding until a judgment has been entered. See K.S.A. 59-29a05(a)(1). Even after this court's ruling in *Franklin I*, Franklin remained subject to a petition and a probable cause finding, so he had to be confined in jail awaiting retrial. On appeal, Franklin concedes as much. Franklin's claim then rests on his being deprived of his liberty in the wrong place—the hospital rather than jail—for about three months in 2008 before his retrial.

Whatever the real or imagined merits of that claim, it legally has nothing to do with the basis for or conditions of Franklin's present confinement for treatment as a sexually violent offender. Franklin has been confined as a result of the jury verdict and judgment entered after the second trial. And, as we have outlined, a 60-1501 petition provides a vehicle for attacking the constitutional sufficiency of a *current* confinement. The petition and this appeal, therefore, cannot as a matter of law afford Franklin any remedy for his claimed constitutional deprivation resting on his confinement in 2008 as he awaited the retrial. The claim warrants no relief under K.S.A. 60-1501.

*Authority to Conduct a New Involuntary Commitment Trial*

Franklin challenges the district court's authority to proceed with the second involuntary commitment trial because the State did not file a new petition under the KSVPA. He further argues the State could not file a new petition in 2008, since he was no longer in custody serving a sentence for a sexually violent crime. See K.S.A. 59-29a03(a)(1). This argument misperceives the posture of the KSVPA commitment action after our remand to the district court in *Franklin I*.

In *Franklin I*, this court found that Franklin had not received a fair trial and simply ordered that he be given a new trial during which the State could not use the evidence that had tainted the first trial. See *Franklin I*, 2008 WL 2051733, at *5 ("Reversed and

7

remanded for a new trial with directions not to admit evidence of the levels of review of the case that occurred before the jury trial."). This court did not dismiss the original petition for commitment or otherwise order the State to start the commitment process over again.

Given the lapse of time from the filing of the commitment petition to the remand for a retrial, the district court had the discretion to hold a new probable cause hearing and to order a new psychological examination of Franklin, as provided in K.S.A. 59-29a05(d). The issue for the jury in the retrial was whether Franklin qualified as a sexually violent predator at that time rather than when the petition had been filed. See K.SA. 59-29a07(a) ("The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator.").

The effect of this court's mandate in *Franklin I* was to return the involuntary commitment proceedings to the point of trial, leaving the commitment petition itself legally untouched and fully effective. The State, therefore, did not have to file a new commitment petition, undercutting the premise of Franklin's argument here. The argument, therefore, provides no basis for relief.

*Probable Cause Determination*

Franklin contends that the court lacked authority to make a new probable cause determination to continue his confinement pending retrial if the State did not file a new commitment petition. This plays with themes similar to Franklin's argument about the need for a new commitment petition. In reviewing the record on the 60-1501 petition, we cannot tell whether the district court handling the commitment proceedings after the remand in *Franklin I* actually held a preliminary hearing or not. Basically, Franklin says the district court could not have held a preliminary hearing until a new commitment

8

petition had been filed. And he also argues the State could not lawfully file a new petition. Again, the entire foundation of the argument is faulty.

Moreover, whether Franklin should have received a second preliminary hearing before the retrial does not raise an issue bearing on his current confinement. As we have said, Franklin is presently confined because of the jury verdict and resulting judgment affirmed in *Franklin II*. The absence of a new preliminary hearing would not have diminished the due process afforded Franklin in the retrial itself. So the issue is not one properly before the court in a 60-1501 proceeding attacking the constitutional sufficiency of Franklin's commitment as a sexually violent predator based on the jury verdict rendered in the second trial.

*Mental Health Evaluation*

Next, Franklin contends that the district court deprived him of due process by failing to order a mental health evaluation by a qualified expert before his retrial, as required by K.S.A. 59-29a05(d). The statutory examination presumably is intended to provide a relatively current assessment of the subject's psychological status in advance of trial bearing on the criteria for determining whether he or she is a sexually violent predator. In turn, the mental health professional making the examination could be called as a witness at trial.

The record on appeal in this 60-1501 matter doesn't establish whether the district court hearing the commitment proceeding following the remand in *Franklin I* ordered an examination under K.S.A. 59-29a05(d). But Franklin contends he remained at Larned Hospital until the end of July 2008 and the retrial began December 1, 2008. Several mental health clinicians, including a psychologist, who evaluated and treated Franklin at the hospital testified during the retrial. Their expert assessments were the functional equivalent of the statutory examination, providing a contemporaneous portrait of

9

Franklin's psychological status. Franklin cannot establish a due process violation under the circumstances. The subject of an involuntary commitment under the KSVPA is entitled to an independent psychological evaluation by a clinician of his or her choosing. See K.S.A. 59-29a06(b). Franklin does not now complain that he was somehow deprived of the opportunity to avail himself of an independent evaluation before the retrial, further undercutting any conceivably prejudicial due process violation. The point presents no ground for relief now.

*Due Process Repackaged*

Franklin raises, as separate points on appeal, arguments that the district court erred in denying his 60-1501 petition because he has stated due process violations and that the way the district court handled his commitment proceeding after the remand in *Franklin I* was "shocking to the conscience," invoking a standard for a substantive due process violation. See *County of Sacramento v. Lewis*, 523 U.S. 833, 845-47, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 896, 256 P.3d 876 (2011). But the bases for those points are the same ones he has otherwise raised. The arguments, then, essentially repackage what we have already reviewed and simply put different bows on the packages. What's inside remains the same and fails to establish any sound legal argument for relief here.

*Equal Protection*

On appeal, Franklin attempts to craft an argument that the district court's handling of the commitment proceedings deprived him of equal protection in violation of the Fourteenth Amendment. Franklin claims he has been treated differently from other persons subject to involuntary commitment under the KSVPA.

10

The Equal Protection Clause prevents state and local governments from treating groups of people differently, whether through legislative enactment or other policies and practices, without some justification. See *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'") (quoting *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393 [1961]); *Reed v. Reed*, 404 U.S. 71, 75-76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971) ("The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute."); *Jurado v. Popejoy Constr. Co.*, 253 Kan. 116, 123, 853 P.2d 669 (1993) ("[E]qual protection requires . . . that legislative classifications be reasonable, not arbitrary, and that they be justified by legitimate legislative objectives."). To state an equal protection claim, then, a party must show some sort of governmental disparate treatment of groups based on a regulatory or statutory scheme. Depending upon the characteristics of the groups and the nature of the benefit or burden allocated through the scheme, the courts apply more or less rigorous review in assessing any potential equal protection violations.

When a government classification burdens a fundamental right or divides based upon characteristics considered inherently suspect in granting benefits or imposing burdens—including race, national origin, and alienage—courts apply the most rigorous review, commonly known as strict scrutiny. A classification survives strict scrutiny only if it furthers compelling government interests and is narrowly tailored to advance those interests. *Plyler v. Doe*, 457 U.S. 202, 216-17, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); *Zablocki v. Redhail*, 434 U.S. 374, 388, 98 S. Ct. 673, 54 L. Ed. 2d 618 (1978); *Bostic v. Schaefer*, 760 F.3d 352, 375 & n.6 (4th Cir. 2014); *Kitchen v. Herbert*, 755 F.3d 1193, 1218 (10th Cir. 2014). A few other group characteristics, notably gender and illegitimacy, have been treated as "quasi-suspect," invoking a heightened level of judicial review,

11

though less demanding than strict scrutiny. See *Clark v. Jeter*, 486 U.S. 456, 461, 108 S. Ct. 1910, 100 L. Ed. 2d 465 (1988); *Hayden v. Greensburg Community School*, 743 F.3d 569, 577 (7th Cir. 2014) (gender); *Pierre v. Holder*, 738 F.3d 39, 50 (2d Cir. 2013) (gender and legitimacy). Courts require statutes distinguishing among people on quasi-suspect bases to be "substantially related to an important governmental objective." *Clark*, 486 U.S. at 461. That requires the actual purpose for or justification of the statute's differential treatment to be "exceedingly persuasive." *United States v. Virginia*, 518 U.S. 515, 532-33, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996); *Hayden*, 743 F.3d at 577. But most economic and social regulations affect neither a fundamental right nor a protected class characteristic. In those instances, courts apply a relaxed, "rational basis" review to an equal protection challenge. See *Vacco v. Quill*, 521 U.S. 793, 799, 117 S. Ct. 2293, 138 L. Ed. 2d 834 (1997); *Kwong v. Bloomberg*, 723 F.3d 160, 172 (2d Cir. 2013). A government classification survives rational basis review if "'a plausible policy reason'" supports the scheme and it is not so removed from that reason as to result in an "'arbitrary or irrational'" distinction. *Fitzgerald v. Racing Assn. of Central Iowa*, 539 U.S. 103, 107, 123 S. Ct. 2156, 156 L. Ed. 2d 97 (2003) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11-12, 112 S. Ct. 2326, 120 L. Ed. 2d 1 [1992]); see *Heller v. Doe*, 509 U.S. 312, 319-20, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993); *State v. Cheeks*, 298 Kan. 1, 9, 310 P.3d 346 (2013). The statute or other regulation may be upheld for any justifiable purpose; the purpose need not be the one that prompted its adoption. See *McDonald v. Board of Election*, 394 U.S. 802, 809, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *Estate of Kunze v. Commissioner of Internal Revenue*, 233 F.3d 948, 954 (7th Cir. 2000).

We can't engage that analytical process because Franklin has not stated or defined an equal protection claim. He has not identified classes or groups among the persons the State has sought to commit for treatment as sexually violent predators who have somehow been treated differently. Franklin says he has been treated differently, but he doesn't explain how either generally or specifically. Nor does he indicate if anyone else has been treated in the same way he has. Although the United States Supreme Court has

12

recognized that in some narrow circumstances, government treatment of a single individual in an arbitrary or irrational way may permit a "class-of-one" equal protection claim, we do not understand Franklin to be trying to bring such a claim. See *Engquist*, 553 U.S. at 601-02. But his failure to define in any meaningful way the manner in which he has been treated differently or disparately scuttles any equal protection claim. We simply have nothing to analyze based on what Franklin has presented to us. We would have to make up a claim for him. Franklin has failed to offer any basis for equal protection relief.

*Appointment of Counsel*

Franklin briefly argues that the district court erred in not appointing a lawyer to represent him in this 60-1501 action. The right to counsel in civil proceedings, such as habeas corpus actions, is not constitutionally guaranteed and depends solely upon a statutory grant. See *Holt v. Saiya*, 28 Kan. App. 2d 356, 362, 17 P.3d 368 (2000). Under K.S.A. 22-4506(b), a habeas corpus petitioner may be appointed counsel when "the petition . . . presents substantial questions of law or triable issues of fact."

Franklin has presented us with no claims that could be characterized as substantial or triable. And he has not pointed to some other claims he raised in the district court that might have been. In short, when a 60-1501 petition is properly dismissed summarily, as in this case, the district court is not required to appoint counsel. See *Griffin v. Bruffett*, 53 Kan. App. 2d 589, 606-07, 389 P.3d 992 (2017); *Merryfield v. State*, 44 Kan. App. 2d 817, 826, 241 P.3d 573 (2010).

Having reviewed all of Franklin's appellate claims on the merits, we find nothing warranting habeas corpus relief.

Affirmed.

13