S93A0252. BARGE-WAGENER CONSTRUCTION COMPANY et al. v. MORALES et al.

(429 SE2d 671)

CLARKE, Chief Justice.

Jose Morales was employed as a construction worker by appellant Barge-Wagener when he fell to his death from a building on which he was working. His wife and two minor children survive him. They are citizens of Mexico and reside in that nation.

The State Board of Workers' Compensation ("Board") granted $1,000 in benefits to Mr. Morales' widow and minor children as required under OCGA § 34-9-265 (b) (5).[1] The beneficiaries appealed the decision to the superior court alleging that the statute violates the equal protection clause of the Georgia Constitution. The superior court reversed the decision of the Board. Looking to a Florida Supreme Court's invalidation of a nearly identical Florida statute, the

---

[1] This section reads:
(b) If death results instantly from an accident arising out of and in the course of employment . . . the compensation under this chapter shall be as follows:
. . .
(5) If the employee leaves dependents who are not citizens or residents of the United States or the Dominion of Canada at the time of the accident, the amount of compensation shall not in any case exceed $1,000.00.

superior court held that alienage is a suspect classification. The court went on to hold that the statute could not withstand the requirements of strict scrutiny under the equal protection clause. Barge-Wagener and its insurer, Argonaut Insurance Company, filed an application for discretionary appeal. We granted the application and now reverse.

This case raises two issues. First, whose rights are at stake, the decedent worker's or the nonresident dependents'? Second, does OCGA § 34-9-265 (b) (5) violate the pertinent party's rights under the Georgia Constitution?

1. The first step of our inquiry is to decide in whom the workers' compensation benefits are vested. Our analysis begins with an examination of the statute. Upon the death of an employee, the employer must pay benefits to the employee's dependents under OCGA § 34-9-265. Two types of benefits are payable after the death of the employee. The employer must "pay the reasonable expenses of the employee's last sickness and burial expenses not to exceed $5,000.00. If the employee leaves no dependents, this shall be the only compensation." OCGA § 34-9-265 (b) (1). In addition, the employer must pay to the employee's dependents a portion of "[a] weekly compensation which is provided for in Code Section 34-9-261." OCGA § 34-9-265 (b) (2).

Death benefits under workers' compensation statutes are separate and distinct from the right to compensation vested in the employee by reason of injury. See *Intl. Mercantile Marine Co. v. Lowe*, 93 F2d 663 (2nd Cir.), cert. denied, 304 U. S. 565 (1938). Death benefits do not become part of the estate of the deceased, and are not liable for his debts, "but is the exclusive property of the beneficiaries." 82 AmJur2d 184, Workers' Compensation, § 187 (1992). The death benefits are intended to compensate the beneficiaries for their injury, which is the loss of support resulting from the death of the deceased worker. This is not merely the survival of the rights of the deceased; the rights to death benefits do not accrue until the death of the worker.

In this respect, the workers' compensation scheme is analogous to the right of recovery under the wrongful death statute, OCGA §§ 51-4-2 and 51-4-3. Although based on an actionable tort upon the decedent, this statutorily created action is not a property right of the decedent's estate. *Boggan v. Boggan*, 145 Ga. App. 401 (243 SE2d 664) (1978). The wrongful death action, like death benefits under workers' compensation, are rights vested in the surviving family. *Dixon v. Ross*, 94 Ga. App. 187, 188 (94 SE2d 86) (1956).

The sickness and burial expenses are not like death benefits; they are for the benefit of the decedent's estate. As such, these payments are a property right of the decedent employee.

Given the provisions of the statute, we find that the legislature intended the rights to death benefits to vest in the dependents while making the burial expenses recoverable by the decedent's estate. We conclude that the dependents must assert their own rights to the benefits and cannot rely on the constitutional status of the decedent.

2. The second prong of our inquiry applies the equal protection clause to these two sets of property rights.

The equal protection clause of the Georgia Constitution[2] is "substantially equivalent" to the equal protection clause of the Fourteenth Amendment of the U. S. Constitution.[3] *McDaniel v. Thomas*, 248 Ga. 632, 638 (285 SE2d 156) (1981); *Suber v. Bulloch County Bd. of Educ.*, 722 FSupp. 736 (S.D. Ga. 1989). OCGA § 34-9-265 clearly discriminates between U. S. and Canadian citizens and residents on the one hand and all other nonresident aliens on the other. The question, however, is whether the discrimination is an unlawful one.

Aliens are treated under United States law under an ascending hierarchy of rights and privileges. The U. S. Constitution "expressly accord[s] differing protection to aliens than to citizens." *United States v. Verdugo-Urquidez*, 494 U. S. 259 (110 SC 1056, 108 LE2d 222) (1990). Resident aliens are entitled to important constitutional rights guaranteed under the equal protection and due process clauses. *Yick Wo v. Hopkins*, 118 U. S. 356 (6 SC 1064, 30 LE 220) (1886). The superior court and appellees, however, do not distinguish between aliens within the jurisdiction of the United States and aliens residing outside this country. The United States Supreme Court, however, has been clear that it is the alien's presence within its territorial jurisdiction that gives the Judiciary power to act. *Johnson v. Eisentrager*, 339 U. S. 763, 770-771 (70 SC 936, 94 LE 1255) (1950). We hold that the equal protection clause does not extend to nonresident aliens and that the Board correctly awarded death benefits under OCGA § 34-9-265 (b) (5).

Aliens outside the borders of the United States are subject to their own nations' laws and cannot invoke the protections reserved for citizens and residents of the United States. OCGA § 34-9-265 (b) (5) surely discriminates against Mr. Morales' family in Mexico, but it is not unlawful. They must settle for what the legislature of this state is willing to provide.

The superior court agreed with the reasoning of the Florida Supreme Court in a case striking down an almost identical statute.[4] *De*

---

[2] "No person shall be denied equal protection of the laws." Ga. Const., Art. I, Sec. I, Par. I.

[3] "No state shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U. S. Const., amend. XIV, § 1.

[4] The Florida statute is nearly identical to our own statute. Fla. Stat. Ann., ch. 440.016

*Ayala v. Fla. Farm Bureau Cas. Ins. Co.*, 543 S2d 204 (Fla. 1989). The decision of the Florida Court rested on the conclusion that the dependents were asserting the rights of the decedent employee. Since the equal protection clause extends to resident aliens, the denial of full death benefits was held unconstitutional. Our decision turns on the finding that the death benefits are the property of the nonresident dependents. As a result, the dependents cannot assert the resident employee's constitutional rights. See *De Ayala,* supra at 208-209 (Overton, J., dissenting).

3. Notwithstanding our holding above, we find that the decedent's estate has the right to reasonable burial expenses under OCGA § 34-9-265 (b) (1). See *Hartford Accident &c. Co. v. Braswell,* 85 Ga. App. 487 (69 SE2d 385) (1952) (finding that widow acting in capacity of personal representative of the estate may bring action for disability compensation). Burial expenses are to be paid "in addition to any other compensation." OCGA § 34-9-265 (b) (1). Subsections (2) through (5) explain the amounts of dependent benefits that are to be paid subject to whether the dependents are totally or partially dependent on the employee. In the present case, the total dependent "compensation shall not in any case exceed $1,000." OCGA § 34-9-265 (b) (5). Since burial expenses granted under subsection (b) (1) are not compensation for dependents, the employee's estate is entitled to this payment.[5] We find that the workers' compensation benefits to be paid to appellees should also include reasonable burial expenses, up to $5,000.

Constitutional requirements also mandate this result. The state cannot deny burial expenses to the estate of Mr. Morales simply because he is an alien or has dependents who are aliens. Burial expenses are the property of Mr. Morales' estate. The equal protection clause extends to all those within the jurisdiction of the United States. To deny the benefits of burial expenses to Mr. Morales because of his alienage or the alienage of his family is an arbitrary exercise of the law in violation of the equal protection clause.[6]

In summary, we find that the limitations on death benefits con-

---

(c) (7). In 1987, however, the Florida legislature increased the amount of compensation from $1,000 to $50,000. Fla. L. 1987, ch. 87-330, § 4.

[5] OCGA § 34-9-265 was first passed in 1920 in essentially the same form in which it now appears. Ga. L. 1920, p. 188, § 38. While the amount of compensation for burial expenses increased from $100 in 1920 to $5,000 in 1985, Ga. L. 1985, p. 727, § 11, the benefits paid to nonresident dependents remained at $1,000. Apparently, the legislature intended these sections to be independent payments.

[6] There does not appear to be evidence in the record showing whether Mr. Morales is a permanent resident, temporary resident, or U. S. citizen. However, we need not decide his residency status here. It is sufficient to say that he is entitled to equal protection rights. Denial of his burial benefits based on his status or the status of his relatives is arbitrary and capricious and cannot stand even under a rational basis scrutiny.

tained in OCGA § 34-9-265 (b) (5) do not violate the equal protection clause of the Georgia Constitution. The denial of burial expenses to the estate of Mr. Morales, however, is reversed.

*Judgment reversed. All the Justices concur, except Benham and Sears-Collins, JJ., who dissent.*

BENHAM, Justice, dissenting.

This matter is before the court mainly to determine whether OCGA § 34-9-265 (b) (5) violates the Equal Protection Clauses of the Georgia Constitution and the United States Constitution. Turning briefly to the facts, we see that Jose Morales, age 31, was employed as a construction worker for appellant on September 19, 1990, when he fell 22 stories to his death. He left as dependents a wife and two small children who reside in Mexico. They filed a claim for Workers' Compensation benefits and were awarded the sum of $1,000 under OCGA § 34-9-265 (b) (5). They appealed that award to the Fulton County Superior Court which found the statute in question to be violative of the Equal Protection Clauses of the Georgia Constitution and the Fourteenth Amendment of the United States Constitution. On this appeal from that decision, a majority of this court, relying in part on the opinion of a lone dissenter of the Florida Supreme Court, has determined that there is no equal protection violation. Finding myself in disagreement with that view as expressed in Divisions 1 and 2 of the majority opinion, I must respectfully dissent.

1. In reaching its decision, the majority first, and in a very artful manner, determined that benefits provided under OCGA § 34-9-265 (b) (5) belong to the dependents and not to the employee's estate. In support of that approach, the majority opinion analogized the Workers' Compensation statute to the Wrongful Death Statute, concluding that the legislature intended for death benefits under the Workers' Compensation statute to vest exclusively in the dependents as they do under the Wrongful Death statute. Having made those determinations, the majority easily dismissed the claim of an equal protection violation because the nonresident-alien dependents no longer have standing to pursue it. However, the analogy to the Wrongful Death statute is fatally flawed. While the right to recover for the death of a family member in a wrongful death action clearly and properly belongs to the survivors, the benefits which flow from the workers' compensation system are benefits afforded to the *worker* in exchange for giving up the right to seek redress for injuries suffered on the job. As the Supreme Court of Florida noted, "[o]ne of the primary benefits that an employee works for is the satisfaction and well-being of providing for his or her family." *De Ayala v. Fla. Farm Bureau Cas. Ins. Co.*, 543 S2d 204, 207 (Fla. 1989). It is painfully ironic that the majority's analysis of this case results in an employee having bargained

away a right of action which may have sustained his family after his death in exchange for the right to benefits his family is denied solely because they are not resident in this country.

In considering this matter of standing, we need look no further for guidance than to our sister state of Florida which, in considering the same issue, determined that the dependents were pursuing the rights of the deceased worker and, therefore, that they had standing to challenge the constitutionality of the statutory scheme. In *De Ayala v. Fla. Farm Bureau Cas. Ins. Co.*, supra at 206, the Florida Supreme Court held as follows:

> [W]e do not perceive this case as hinging on the constitutional rights of the surviving dependents, but on the constitutional rights of the worker, now deceased. . . . This case concerns whether a worker who happens to have dependents residing out of the country is entitled to the same fruits of his or her labor as any other worker, including the same insurance benefits where the state has required those benefits to be provided. It thus is immaterial that petitioners happen to be nonresident aliens, since they have standing in this context as his beneficiaries.

We should reach the same conclusion here in Georgia because, as was the case in Florida, the benefits in question were generated by the employee's labor and flowed through him to the intended beneficiaries, his dependents. We should recognize their standing to enforce the rights which Mr. Morales earned by his labor while resident in this country.

2. Having concluded that the nonresident-alien dependents of Mr. Morales have standing to challenge the constitutionality of OCGA § 34-9-265 (b) (5), I now turn to the issue of whether a statutory scheme which provides different benefits to similarly situated persons denies equal protection.

What we have in this controversy are two similarly situated hemispheric neighbors, Canada and Mexico, with dissimilar treatment of their citizens. Resident aliens whose nonresident dependents are Canadian citizens are accorded full rights; resident aliens whose dependents are Mexican citizens are accorded abbreviated rights. Clearly, this is unequal treatment. However, unequal treatment standing alone is not enough to constitute a constitutional violation.

We must determine, therefore, whether this dissimilar treatment rises to the level of constitutional impermissibility. The claim is made that this conduct is violative of the Equal Protection provisions of both the Georgia Constitution and the Fourteenth Amendment of the United States Constitution, which provisions are, as the majority

points out, substantial equivalents. Again, we would do well to heed the words of the Florida Supreme Court:

> In evaluating claims of statutory discrimination, a statute will be regarded as inherently "suspect" and subject to "heightened" judicial scrutiny if it impinges too greatly on fundamental constitutional rights flowing either from the federal or [state c]onstitutions, or if it primarily burdens certain groups that have been the traditional targets of irrational, unfair, and unlawful discrimination. [Cits.]

*De Ayala v. Fla. Farm Bureau Cas. Ins. Co.*, supra at 206. On that issue, the decisions of the U. S. Supreme Court

> have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a "discrete and insular" minority [cit.] for whom such heightened judicial solicitude is appropriate.

*Graham v. Richardson*, 403 U. S. 365, 372 (91 SC 1848, 29 LE2d 534) (1971). The Supreme Court went on in *Graham* to note that where a suspect classification is involved, there must be a compelling state interest to justify it. No such compelling interest has been articulated or is present in this case. Here we have a deceased employee who, although not a citizen but a resident alien, paid taxes, contributed to the economic growth of this country, and bore the same burdens as other employees; yet his dependents are denied the fruits of his labor, specifically workers' compensation benefits, because they were not residents of this country at the time of his death. At the same time, Canadians, who are also hemispheric neighbors, are accorded full benefits. I find no justification for that distinction.

Through the statutory scheme approved by the majority in this case, resident alien workers of Mexican citizenship who have nonresident families must wear a badge of inferiority. While we are bound to uphold the laws, we are not bound to do so without giving thought to matters of policy and justice, neither of which would be served by creating a "throw-away" class of workers. Yet, we must recognize that a likely result of the majority's holding in this case is that employers may with impunity derive considerable savings by skimping on safety precautions because it will be more economical to hire Mexican nationals with nonresident families for the most hazardous jobs, and let them die, than it would be to institute proper safety procedures. Such a result is totally at odds with the intent of the Workers' Compensation Act.

For the reasons stated above, I must dissent to the majority's re-

versal of the trial court's judgment.

I am authorized to state that Justice Sears-Collins joins in this dissent.

DECIDED MAY 24, 1993 —
RECONSIDERATION DENIED JUNE 18, 1993.

*Kissiah & Associates, Michael D. Thorpe, W. Martin Miles,* for appellants.

*Coello & Wilder, Bonny Berry Wilder,* for appellees.

*Nelson & Hill, Janet E. Hill, Sujata Gupta Winfield,* amicus curiae.