Jody Perez ROJAS, Alleged Spouse, Samuel David Perez, Minor Child,

Yolanda Carreras Narvaez, Alleged Spouse, and Raul Perez Carreras, Juan Carlos Perez Carreras, Vinicio Perez Carreras, Yolanda Perez Carreras, and Mercedes Perez Carreras, Alleged Minor Children of Raul Perez Rojas, Deceased, Appellants,

v.

PINE RIDGE FARMS, L.L.C., Employer and Commerce & Industry Ins. Co., Insurance Carrier, Appellees.

No. 08–0554.

Supreme Court of Iowa.

March 5, 2010.

Thomas J. Reilly of Thomas J. Reilly Law Firm, P.C., Des Moines, for appellants Jody Perez Rojas and her dependent.

Randall P. Schueller of Hopkins & Huebner, P.C., Des Moines, for appellants Yolanda Carreras Narvaez and her dependents.

Jean Z. Dickson of Betty, Neuman & McMahon, P.L.C., Davenport, for appellees.

WIGGINS, Justice.

The workers' compensation commissioner awarded benefits to the dependents of a deceased employee. The dependents included the spouse, a child residing in the

United States, five children born in Mexico, and the mother of those children who resides in Mexico. The commissioner equitably, rather than equally, allocated the benefits between all the dependents. In allocating the benefits between the dependents, the commissioner also considered a statute requiring benefits payable to nonresident aliens be reduced by fifty percent, with the remaining fifty percent payable to the Second Injury Fund. *See* Iowa Code § 85.31(5) (2003). All of the dependents filed petitions for judicial review. The district court affirmed the decision of the workers' compensation commissioner. All of the dependents filed notices of appeal.

We transferred the case to the court of appeals. The court of appeals affirmed the commissioner's decision. All of the dependents then requested further review, which we granted. On further review, we find that the statute requiring a reduction in benefits for nonresident aliens is neither unconstitutional nor does it conflict with other statutory provisions. We also conclude the commissioner erred when he allocated a portion of the benefits to the mother of the children residing in Mexico. We further conclude that the allocation of the benefits should be equitable rather than equal. Finally, we conclude that the commissioner should not have considered the reduction in benefits for nonresident aliens when it allocated the benefits between the dependents. Accordingly, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case to the district court to enter an order reversing the decision of the workers' compensation commissioner and remanding the case to the commissioner to reallocate the benefits between the dependents entitled to receive compensation in a manner consistent with our decision.

## I. Background Facts and Proceedings.

Raul Perez Rojas died in a work-related accident on February 15, 2004, while working for Pine Ridge Farms, L.L.C. ("Pine Ridge"). In the summer of 1987, Raul married Yolanda Carreras Narvaez in a religious ceremony in Mexico. Although religious ceremonies are common in Mexico, they have no legal effect under Mexican law. In Mexico only a civil marriage is legally recognized. The commissioner determined that because Mexico does not recognize Raul and Yolanda as legally married, Iowa's workers' compensation laws do not recognize their marriage.[1]

Yolanda claims she and Raul had five children: Raul Perez Carreras born June 18, 1987, Juan Carlos Perez Carreras born May 19, 1989, Vinicio Perez Carreras born February 1, 1995, Yolanda Perez Carreras born October 16, 1996, and Mercedes Perez Carreras born February 12, 1998. The parties disagree on whether Mercedes is Raul's child. Raul is not listed on Mercedes' birth registry in Mexico; however, he is listed on her baptism announcement. The commissioner determined Mercedes is Raul's child. Jody Perez Rojas, Raul's spouse, does not argue paternity in her application for further review, and we believe substantial evidence supports the commissioner's finding that Mercedes is Raul's child.

After his marriage to Yolanda, Raul worked and lived in the United States and returned to Mexico periodically. During his stays in the United States, he sent money to Yolanda to support her and the children. While living in Polk County, Raul met Jody Prock, and in May 1999, they married. Jody and Raul have one

---

**1.** The legality of Raul's marriage to Yolanda is    not at issue in this appeal.

son, Samuel David Perez, born February 4, 2002.

Raul initiated proceedings with the Immigration and Naturalization Service to become a documented worker. He returned to Mexico during this time and was living with Yolanda and the children. Neither Jody nor Yolanda knew about Raul's other marriage or family. After his marriage to Jody, Raul continued to regularly send money to Yolanda and the children. Jody believed this money was for his ailing mother. Raul sent Yolanda an average of $91.54 per week when he was working in the United States.

Yolanda relies on her oldest sons for her current source of income. They contribute roughly $40 to $60 per week. Yolanda's oldest sons were living with her sister in Juan Leon, Mexico, but her seventeen-year-old son, Juan Carlos, is currently working in Texas. Yolanda's monthly expenses for herself and the children are approximately $325 to $425. Yolanda has never worked outside the home and stopped attending school at age eleven. The children own the family home. Yolanda's economic position is meager, and most families in her town receive economic remittances from people working in the United States.

Jody's monthly living expenditure for herself and her son is approximately $2064. She has received some death benefits from Pine Ridge. Jody has received money from a life insurance policy, retirement benefits, and social security, all due to her husband's death. The social security amount she receives will end once she has completed school and starts working full-time, but her son will continue to receive these benefits. However, Jody still has debts stemming from a car accident, medical bills, and a school loan. Jody worked outside the home throughout the marriage except when she was pregnant and for a short period after the birth of her son.

Due to the misunderstanding concerning Raul's dependents, Jody received some death benefits from Pine Ridge. Pine Ridge terminated those payments on August 26, 2004. Pine Ridge's insurance carrier hired investigators to determine the validity of Yolanda's claim. Pine Ridge filed a petition with the workers' compensation commissioner to determine the equitable apportionment of the death benefits. Nine months later, Pine Ridge dismissed its petition. Then, in spring 2005 Jody and Yolanda both filed separate petitions for equitable apportionment of the death benefits with the workers' compensation commissioner on behalf of themselves and their children.

The deputy commissioner filed an equitable apportionment decision. The deputy determined that Jody, Samuel, Yolanda, and Yolanda's five children were all dependents to be included in the equitable apportionment of benefits. The decision found Yolanda was an actual dependent under Iowa Code section 85.44 and the children were presumed dependents. The deputy found, at the time of Raul's death, his weekly rate of compensation was $360.79. Of that amount, the deputy determined Jody would receive fifty percent as the surviving spouse, Samuel would receive twenty percent during his dependency, and Yolanda and the five children would receive the remaining thirty percent. The decision also stated that fifty percent of the share of benefits that Yolanda and the five children were apportioned must be paid to the Second Injury Fund pursuant to Iowa Code section 85.31(5).

Jody and Yolanda separately appealed from the deputy commissioner's equitable apportionment decision. Another deputy commissioner, sitting pursuant to an order of delegation under Iowa Code section

86.3, affirmed the equitable apportionment decision and adopted it as the commissioner's final decision. In doing so, the second deputy added some additional analysis to the prior equitable apportionment decision. The final decision stated Yolanda and the five children were actual dependents pursuant to Iowa Code section 85.44 because they depended on Raul's income. It also stated Yolanda and the five children received roughly fifteen percent of Raul's gross wages; therefore, they should receive fifteen percent of the death benefits. However, the final decision goes on to state because fifty percent of the benefits Yolanda and the five children receive must be paid into the Second Injury Fund, the deputy correctly considered this factor when he apportioned thirty percent of the death benefits to them. Thus, the final decision upheld the deputy's equitable apportionment award.

In summer 2007 Jody and Yolanda separately filed petitions for judicial review. The district court consolidated these cases. The district court affirmed the workers' compensation commissioner in all respects. The court affirmed the allocation of benefits and stated the commissioner could consider the Second Injury Fund deduction when apportioning benefits. The court also found Iowa Code section 85.31(5), imposing the Second Injury Fund deduction, was constitutional under both the Federal and Iowa Constitutions. The court further concluded that if section 85.31(5) conflicted with Iowa Code section 85.51, which the court questioned, section 85.31(5) would still govern because the Second Injury Fund statute was the more specific of the two statutes.

Jody and Yolanda separately appealed this decision. We transferred the case to the court of appeals. The court of appeals affirmed the commissioner.

Both Yolanda and Jody filed applications for further review, which we granted.

## II. Issues.

In this appeal, we must first decide whether Iowa Code section 85.31(5) violates equal protection of the law under the Federal and Iowa Constitutions by discriminating against nonresident aliens. Next, we must decide the applicability of Iowa Code section 85.51 to this appeal. Finally, we must decide if the commissioner correctly decided the apportionment of weekly death benefits.

## III. Constitutional Claims.

All but nine states have workers' compensation laws concerning benefits payable to nonresident aliens. 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 97.07, at 97–25 (2009) [hereinafter *Larson's Workers' Compensation*]. Five states treat nonresident aliens on equal terms with other dependents, while five states exclude nonresident aliens from benefits entirely. *Id.* A majority of the remaining states provide for a reduction of benefits or the commutation of benefits to a lump sum on a reduced basis. *Id.* Iowa's workers' compensation statute follows the majority of the states and reduces the amount of benefits a nonresident alien can receive. Accordingly, Iowa Code section 85.31(5) provides:

Except as otherwise provided by treaty, whenever, under the provisions of this and chapters 86 and 87, compensation is payable to a dependent who is an alien not residing in the United States at the time of the injury, the employer shall pay fifty percent of the compensation herein otherwise provided to such dependent, and the other fifty percent shall be paid into the second injury fund in the custody of the treasurer of state. But if the nonresident alien dependent is

a citizen of a government having a compensation law which excludes citizens of the United States, either resident or nonresident, from partaking of the benefits of such law in as favorable degree as herein extended to the nonresident alien, then said compensation which would otherwise be payable to such dependent shall be paid into the second injury fund in the custody of the treasurer of state.

Iowa Code § 85.31(5).

In their application for further review, Yolanda and her five children claim the provisions of section 85.31(5) violate due process and equal protection of the law as guaranteed by the United States and Iowa Constitutions. However, the district court only addressed their equal protection claims. Yolanda and her five children did not file a motion under Iowa Rule of Civil Procedure 1.904(2) asking the court to enlarge or amend its findings to rule on their due process claims. Thus, Yolanda and her five children did not preserve error on their due process claims; accordingly, we will not address those claims in this appeal. *Meier v. Senecaut,* 641 N.W.2d 532, 537–39 (Iowa 2002).

In the past, we have said the Supreme Court's interpretation of the Federal Equal Protection Clause, while not binding, is persuasive on how we will evaluate a claim made under the Iowa Constitution's equal protection clause. *Ames Rental Prop. Ass'n v. City of Ames,* 736 N.W.2d 255, 258–59 (Iowa 2007). We have always reserved, however, the right to differ our approach in applying an equal protection analysis under the Iowa Constitution in the appropriate case. *Bierkamp v. Rogers,* 293 N.W.2d 577, 579 (Iowa 1980). In making their equal protection argument, Yolanda and her five children did not argue that our equal protection analysis under the Iowa Constitution should

differ in any way from our analysis under the Federal Constitution. Consequently, we decline to apply a different analysis under the Iowa Constitution and only apply a federal analysis to Yolanda and her five children's equal protection claim under the Iowa Constitution. *State v. Simmons,* 714 N.W.2d 264, 277 (Iowa 2006).

We review a constitutional issue raised in an appeal of an agency action de novo. *Drake Univ. v. Davis,* 769 N.W.2d 176, 181 (Iowa 2009). Before applying an equal protection analysis, we must first determine whether Yolanda and her five children can assert a claim of equal protection. In *Yick Wo v. Hopkins,* the Supreme Court stated that although the Equal Protection Clause of the United States Constitution extends beyond mere citizenship, it does not extend beyond the territorial boundaries of the country. *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220, 226 (1886). Subsequent Supreme Court decisions have adhered to this decision. *See, e.g., Graham v. Richardson,* 403 U.S. 365, 371, 91 S.Ct. 1848, 1851, 29 L.Ed.2d 534, 541 (1971) (recognizing citizens and aliens are entitled to equal protection of the laws of the state in which they reside). In 1982 the Supreme Court reiterated that the Equal Protection Clause applies to all those within the jurisdiction of the United States even if the person is in the territory illegally, but it does not apply outside of the territory. *Plyler v. Doe,* 457 U.S. 202, 214–15, 102 S.Ct. 2382, 2393–94, 72 L.Ed.2d 786, 797–98 (1982). Accordingly, at the time Raul died, the Equal Protection Clause did not apply to Yolanda or her five children because they were outside of the country.

Yolanda and her five children do not argue that they are entitled to equal protection of the law as nonresident aliens. Rather, they argue that their claims are

derivative of Raul's claim; therefore, Raul's claim and all claims derived from his claim are entitled to equal protection of the law. In support of their position, Yolanda and her five children cite cases from other jurisdictions holding that a dependent's right to death benefits in a workers' compensation case is a derivative right of the employee; consequently, the employee's rights are at stake when challenging the constitutionality of the receipt of those benefits. *De Ayala v. Fla. Farm Bureau Cas. Ins. Co.*, 543 So.2d 204, 206 (Fla. 1989); *Jurado v. Popejoy Constr. Co.*, 253 Kan. 116, 853 P.2d 669, 675 (1993).

The rationale for holding death benefits in a workers' compensation case are a derivative right of the employee can be found in *Jurado v. Popejoy Construction Co.*, 253 Kan. 116, 853 P.2d 669, 672–75 (1993). There, the court stated the right to death benefits arises out of the employment relationship and is part of the employee's benefits package; therefore, the disparate treatment of nonresident alien dependents occurs before the death of the employee. *Jurado*, 853 P.2d at 673–74. The court found the Kansas workers' compensation statute "separates the two causes of action and creates a separate right of action in the dependents, that right of action is derived from the deceased employee, and everything must relate back to the time of the accident." *Id.* at 674. Because the dependents' action was truly derivative of the employee, the constitutional rights of the now-deceased employee were at stake, not the rights of the nonresident alien dependents. *Id.* at 675. Thus, the court held the nonresident alien dependents were entitled to equal protection of the law under the Constitution. *Id.* at 675.

Yolanda and her five children also recognize that other jurisdictions have decided nonresident alien dependents were not en-

titled to equal protection of the law under the Constitution. *Barge–Wagener Constr. Co. v. Morales*, 263 Ga. 190, 429 S.E.2d 671, 672–73 (1993); *Jarabe v. Indus. Comm'n*, 172 Ill.2d 345, 216 Ill.Dec. 833, 666 N.E.2d 1, 4 (1996); *Pedrazza v. Sid Fleming Contractor, Inc.*, 94 N.M. 59, 607 P.2d 597, 600–01 (1980), *abrogated on other grounds by Kent Nowlin Constr. Co. v. Gutierrez*, 99 N.M. 389, 658 P.2d 1116, 1117–18 (1982); *Alvarez Martinez v. Indus. Comm'n*, 720 P.2d 416, 417–18 (Utah 1986). These jurisdictions based their decisions on the proposition that under state law, a nonresident alien dependent's right to benefits is not derived from the employee, but constituted an independent and distinct claim. *Barge–Wagener Constr. Co.*, 429 S.E.2d at 672–73; *Jarabe*, 216 Ill.Dec. 833, 666 N.E.2d at 4; *Pedrazza*, 607 P.2d at 600–01; *Alvarez Martinez*, 720 P.2d at 417–18. Thus, as nonresident alien dependents and in accordance with Supreme Court jurisprudence, they were not entitled to equal protection of the law under the Constitution. *Barge–Wagener Constr. Co.*, 429 S.E.2d at 672–73; *Jarabe*, 216 Ill.Dec. 833, 666 N.E.2d at 4; *Pedrazza*, 607 P.2d at 600–01; *Alvarez Martinez*, 720 P.2d at 417–18.

In Iowa, we have decided, "[a] dependent's right to workmen's compensation is a distinct claim." *McClure v. Employers Mut. Cas. Co.*, 238 N.W.2d 321, 329 (Iowa 1976). In *McClure*, we found a deceased's widow had an independent claim as a dependent under our workers' compensation laws, separate and distinct from her entitlement to uninsured motorist insurance as the administrator of her husband's estate. *Id.* We see no reason to revisit our holding in *McClure*. We also believe it would be unprincipled to hold a dependent's right to workers' compensation is an independent claim for purposes of an uninsured motorist claim, but derivative for purposes of the

allocation of workers' compensation death benefits.

Therefore, Yolanda and her five children are not entitled to equal protection of the law under the United States and Iowa Constitutions because they have a separate and distinct claim for workers' compensation benefits and they are nonresident aliens.

## IV. Claim under Iowa Code Section 85.51.

■ Yolanda and her five children claim Iowa Code section 85.31(5), which mandates that an employer pay fifty percent of a nonresident alien dependents' awarded benefits to the Second Injury Fund, conflicts with Iowa Code section 85.51. Section 85.51 reads:

> In case a deceased employee for whose injury or death compensation is payable leaves surviving an alien dependent or dependents residing outside the United States, the consul general, consul, vice consul, or consular agent of the nation of which the said dependent or dependents are citizens, or the duly appointed representative of such consular official resident in the state of Iowa, shall be regarded as the exclusive representative of such dependent or dependents, and said consular officials or their representatives shall have the same rights and powers in all matters of compensation which said nonresident aliens would have if resident in the state of Iowa.

Iowa Code § 85.51. Yolanda claims the last phrase in section 85.51 gives nonresident aliens the same rights as residents and is contradictory to the fifty percent reduction in benefits mandated by section 85.31(5).

■ It is well-settled law that the legislature did not clearly vest the workers' compensation commissioner with the power to interpret the workers' compensation statutes. *Schadendorf v. Snap–On Tools Corp.*, 757 N.W.2d 330, 334 (Iowa 2008). Thus, we do not give the commissioner's interpretation of law deference and can substitute our own judgment as to the interpretation of a statute. *Id.* Our primary goal in statutory construction is to determine legislative intent. *In re Estate of Thomann*, 649 N.W.2d 1, 4 (Iowa 2002). When interpreting a statute, we assess the entire statute, not just isolated words or phrases. *State v. Young*, 686 N.W.2d 182, 184–85 (Iowa 2004). We also presume the legislature included all parts of the statute for a purpose, so we will avoid reading the statute in a way that would make any portion of it redundant or irrelevant. *In re Estate of Thomann*, 649 N.W.2d at 4. Where a general statute and a special statute are relevant, we will attempt to construe the statutes to give effect to both. *Id.* If we are unable to give effect to both, the provisions of the more specific statute control. *Id.*

We disagree with Yolanda and her five children's claim that the statutes conflict. First, section 85.31(5) is more specific than section 85.51 as to the benefits payable to nonresident alien dependents. Second, section 85.51 appears to relate to administrative problems that could arise in the course of a proceeding, not the actual amount of compensation due to nonresident alien dependents. If we hold the statutes conflict, the general language of section 85.51 cannot trump the specific language contained in section 85.31(5) because it would render section 85.31(5) mere surplusage.

We can avoid construing these statutes as conflicting by determining section 85.51 applies to the administrative process of the workers' compensation statutes and not to the substantive provisions regarding benefits and compensation. That way, we give effect to both statutes. Consequently, we

do not see a conflict between sections 85.31(5) and 85.51 and hold section 85.31(5) controls the amount of the benefits payable to nonresident alien dependents.

### V. Whether the Commissioner Correctly Apportioned the Death Benefits.

To determine if the commissioner properly apportioned the death benefits, we must construe Iowa Code sections 85.31, 85.42, 85.43, and 85.44. We apply the same scope of review and rules of statutory construction we applied to the interplay between sections 85.31(5) and 85.51 in division IV of this opinion.

The first determination made by the commissioner was that Yolanda and her five children were actual dependents who were wholly dependent upon Raul's income under sections 85.31(1)(*d*) and 85.44. The commissioner then adopted the apportionment of benefits made by the deputy commissioner. The first question we must decide is whether the commissioner's decision applied the proper analysis to determine who is eligible to receive death benefits under the workers' compensation statutes.

Iowa Code sections 85.31 and 85.42 are relevant as to who is eligible to receive death benefits as a dependent of Raul. Section 85.31(1) provides in relevant part:

When death results from the injury, the employer shall pay the dependents who were wholly dependent on the earnings of the employee for support at the time of the injury, during their lifetime, compensation upon the basis of eighty percent per week of the employee's average weekly spendable earnings, commencing from the date of death as follows:

*a.* To the surviving spouse for life or until remarriage, provided that upon remarriage two years' benefits shall be paid to the surviving spouse in a lump sum, if there are no children entitled to benefits.

*b.* To any child of the deceased until the child shall reach the age of eighteen, provided that a child beyond eighteen years of age shall receive benefits to the age of twenty-five if actually dependent, and the fact that a child is under twenty-five years of age and is enrolled as a full-time student in any accredited educational institution shall be a prima facie showing of actual dependency.

. . . .

*d.* To all other dependents as defined in section 85.44 for the duration of the incapacity from earning.

Iowa Code § 85.31(1).

Iowa Code section 85.42 provides in relevant part:

The following shall be conclusively presumed to be wholly dependent upon the deceased employee:

1. The surviving spouse, with the following exceptions:

*a.* When it is shown that at the time of the injury the surviving spouse had willfully deserted deceased without fault of the deceased, then such survivor shall not be considered as dependent in any degree.

*b.* When the surviving spouse was not married to the deceased at the time of the injury.

2. A child or children under eighteen years of age, and over said age if physically or mentally incapacitated from earning, whether actually dependent for support or not upon the parent at the time of the parent's death.

*Id.* § 85.42.

We agree with the commissioner that Yolanda is eligible to receive benefits under section 85.31(1), because she was wholly dependent under section 85.31(1)

and a dependent under section 85.31(1)(*d* ). We disagree with the commissioner's decision finding that Raul's five children with Yolanda were eligible to receive benefits for the same reasons that Yolanda was eligible to receive benefits.

■ Raul's five children with Yolanda are eligible to receive benefits under sections 85.31(1)(*b* ) and 85.42(2). Section 85.31(1)(*b* ) makes children who are wholly dependent on the earnings of the deceased employee eligible to receive benefits. *Id.* § 85.31(1)(*b* ). Under section 85.42(2), Raul's five children with Yolanda are conclusively presumed to be wholly dependent upon Raul when they are under the age of eighteen. *Id.* § 85.42(2). Accordingly, Yolanda's five children are eligible to receive benefits under section 85.31(1)(*b* ), not section 85.31(1)(*d* ).

■ Raul's present spouse, Jody, and his child with Jody, Samuel, are eligible to receive benefits under section 85.31(1). Jody, as the surviving spouse, is eligible to receive benefits under section 85.31(1)(*a* ), because under section 85.42(1) she is conclusively presumed to be wholly dependent. *Id.* §§ 85.31(1)(*a* ), .42(1). Samuel, as Raul's child, is eligible to receive benefits under section 85.31(1)(*b* ), because section 85.42(2) conclusively presumes him to be wholly dependent. *Id.* §§ 85.31(1)(*b* ), .42(2).

Consequently, Jody Perez Rojas, Samuel David Perez, Raul Perez Carreras, Juan Carlos Perez Carreras, Vinicio Perez Carreras, Yolanda Perez Carreras, Mercedes Perez Carreras, and Yolanda Carreras Narvaez are all eligible to receive a portion of the death benefits under section 85.31(1). The aggregate amount of benefits payable to the eligible beneficiaries is eighty percent per week of the employee's average weekly spendable earnings, subject to a maximum benefit limitation contained in the statute. *Id.* § 85.31(1). To

determine the amount of compensation, if any, each eligible person may receive, it is necessary to review the apportionment statutes concerning the distribution of benefits to the eligible beneficiaries.

■ Thus, the second question we must decide is how to apportion the compensation payable between the eligible beneficiaries. The commissioner apportioned fifty percent of the benefits to Jody, twenty percent to Samuel, and thirty percent to Yolanda and her five children. In making this apportionment, the commissioner found that during his lifetime, Raul sent approximately fifteen percent of his gross pay to Yolanda for the support of her and the five children. The commissioner's decision noted Iowa Code section 85.31(5) required the employer to pay fifty percent of any benefits payable to nonresident alien dependents to the Second Injury Fund. Therefore, because the commissioner concluded Yolanda and her five children's net benefit should be fifteen percent, the commissioner doubled the amount of their gross benefits to thirty percent, so that after the fifty percent reduction required by section 85.31(5) Yolanda and her five children would still receive a net benefit of fifteen percent.

On appeal, Yolanda and her five children claim the benefits should be divided equally among all dependents. Jody and Samuel claim the commissioner's decision correctly determined that fifteen percent of the benefits should have been apportioned to Yolanda and her five children, but argue that the commissioner should not have considered the Second Injury Fund reduction, thereby doubling Yolanda and her five children's allocation of benefits to thirty percent.

We find that the commissioner erred in two respects when he apportioned the compensation among the eligible beneficia-

ries. First, the worker's compensation statutes do not allow Yolanda, the parent of Raul's Mexican children, to receive any compensation in an apportionment. Second, the commissioner should not have considered the amount of the benefits payable to the Second Injury Fund when it apportioned the compensation to the nonresident aliens. An examination of the applicable statutes supports our conclusions.

The statutes bearing on the apportionment of benefits are found in sections 85.43 and 85.44. Section 85.43 contains the following language:

> If the deceased employee leaves a surviving spouse qualified under the provisions of section 85.42, *the full compensation* shall be paid to the surviving spouse, as provided in section 85.31; provided that where a deceased employee leave a surviving spouse and a dependent child or children the workers' compensation commissioner may make an order of record for an equitable apportionment of the compensation payments.

*Id.* § 85.43 (emphasis added). Section 85.44 reads:

> *In all other cases*, a dependent shall be one actually dependent or mentally or physically incapacitated from earning. Such status shall be determined in accordance with the facts as of the date of the injury. In such cases if there is more than one person, the compensation benefit shall be equally divided among them. If there is no one wholly dependent and more than one person partially dependent, the compensation benefit shall be divided among them in the proportion each dependency bears to their aggregate dependency.

*Id.* § 85.44 (emphasis added).

Section 85.43 controls the apportionment of the compensation payable because Raul left a surviving spouse, Jody. Section 85.43 requires that "the full compensation shall be paid to the surviving spouse" unless the commissioner equitably apportions the compensation between the surviving spouse and any dependent children. *Id.* § 85.43. Section 85.43 does not provide for any apportionment to an actual dependent, such as Yolanda.

Section 85.44 provides for the payment and apportionment of compensation to an actual dependent. However, section 85.44 has no application to the facts of this case. Section 85.44 begins with the phrase "[i]n all other cases." *Id.* § 85.44. This phrase means that section 85.44 is only applicable when section 85.43 does not apply. Raul left a surviving spouse. Therefore, even though Yolanda is *eligible* as an actual dependent to receive compensation, she is not entitled to receive any of the compensation awarded for Raul's death because section 85.43 controls who is to receive the compensation, not section 85.44.

On first blush, this result appears to be harsh and inconsistent with section 85.31(1). On closer examination, this result is consistent with the scheme envisioned by the legislature when determining who shall receive a worker's death benefits. Section 85.31(1) determines who is eligible to receive a worker's death benefits. Once the class of persons eligible to receive those benefits is determined, sections 85.43 and 85.44 determine who is entitled to receive those benefits. The default provision is the surviving spouse receives the full compensation. *Id.* § 85.43. The default provision assumes if the deceased worker left a surviving spouse, any eligible children would be living in the same household, and the surviving spouse would use the full compensation to support the family unit. If, for example, the deceased worker's children lived in separate households, the legislature gave the commissioner the authority to appor-

tion the compensation equitably between the surviving spouse and the children. This way all of the deceased worker's children would receive a fair share of the compensation.

The legislature also made the decision that actual dependents should not receive any compensation if the worker left a surviving spouse. *Id.* § 85.44. Actual dependents could include individuals like Yolanda, parents, relatives, and even paramours. By this statutory scheme, it is apparent the legislature made a conscious choice that actual dependents should not receive any compensation if the deceased worker left a surviving spouse. It is not our job to second-guess the legislature in its choices. Accordingly, even though Yolanda is eligible to receive death benefits under section 85.31(1), she is not entitled to receive any compensation under section 85.43. Therefore, this case should be remanded to the commissioner to apportion the benefits equitably between Jody Perez Rojas, as Raul's spouse, and Raul's children, Samuel David Perez, Raul Perez Carreras, Juan Carlos Perez Carreras, Vinicio Perez Carreras, Yolanda Perez Carreras, and Mercedes Perez Carreras. Yolanda, the mother of Raul's Mexican-born children, is not entitled to receive any compensation by reason of Raul's death.

■ Section 85.43 requires an equitable apportionment. *Id.* § 85.43. "Equitable" is an undefined term. When the legislature fails to give a definition to a term, we consider the context in which the legislature used the term and give the term its ordinary and common meaning. *City of Des Moines v. Employment Appeal Bd.,* 722 N.W.2d 183, 196 (Iowa 2006). The dictionary defines "equitable" as "fair to all concerned." *Webster's Third New International Dictionary* 769 (unabr. ed. 2002). Black's law dictionary defines "equitable" as "consistent with principles of justice and

right." *Black's Law Dictionary* 578 (8th ed. 2004).

Like most other states, Iowa is known as an "equitable distribution" jurisdiction for purposes of dividing property in a dissolution of marriage proceeding. *In re Marriage of McNerney,* 417 N.W.2d 205, 207 (Iowa 1987). An equitable distribution is not necessarily an equal distribution. *In re Marriage of Anliker,* 694 N.W.2d 535, 542 (Iowa 2005). An equitable distribution depends upon the circumstances of each case. *In re Marriage of Schriner,* 695 N.W.2d 493, 496 (Iowa 2005).

Two sister states appear to apportion death benefits equitably. In Tennessee, a statute allowed the court to allocate death benefits between a spouse and children appropriately. *Farmer v. Farmer,* 562 S.W.2d 205, 207 (Tenn.1978). In Colorado, a statute allowed the commission to apportion the benefits in a manner it deemed just and equitable. *Spoo v. Spoo,* 145 Colo. 268, 358 P.2d 870, 871 (1961). In both cases, the courts found equitable did not mean equal. *Spoo,* 358 P.2d at 871–72; *Farmer,* 562 S.W.2d at 206–07. The equitable division of the benefits required considering all the facts and needs of the dependents. *Spoo,* 358 P.2d at 871–72.

We agree that the ordinary meaning of the term "equitable" does not mean an equal distribution of benefits. In equitably apportioning death benefits between entitled dependents, the commissioner must consider the facts and circumstances of the dependents. This includes consideration of the needs of the dependents. The commissioner's decision appears to allocate the benefits equitably rather than equally.

■ Our inquiry into the allocation is not finished because Jody claims the commissioner's decision should not have considered the fifty percent reduction in benefits required under section 85.31(5) when it

allocated the benefits. In enacting our workers' compensation statutes, the legislature made a conscious choice that certain nonresident aliens should receive reduced benefits. Iowa Code § 85.31(5). One noted treatise attributes this reduction on the problems of proof and administration of these claims, rather than on the desire of a state to discriminate against nonresident aliens. *Larson's Workers' Compensation* § 97.07, at 97–26. The legislature defined how the commissioner allocates benefits in section 85.43. Iowa Code § 85.43. The amount of benefits payable, including the reduction in benefits for nonresident aliens, is found in section 85.31. *Id.* § 85.31. By not incorporating the allocation of benefits with the amount of benefits payable, the legislature intended to keep the determination of the allocation of benefits separate from the determination of the amount of benefits payable to a dependent.

The commissioner's decision circumvented this intent by first determining an equitable allocation of benefits and then doubling the allocation of benefits to Yolanda and her five children to take into consideration section 85.31(5)'s reduction of benefits to nonresident alien dependents. If we were to allow the commissioner to consider this reduction when making an equitable allocation, we would be giving the commissioner the power to circumvent the clear intent of the legislature, that the allocation of benefits is a separate and distinct issue from the amount of benefits payable to a dependent and the benefits payable to nonresident alien dependents are to be reduced by fifty percent. Therefore, the commissioner erred by considering the reduction contained in section 85.31(5) for nonresident aliens when it equitably allocated the death benefits awarded in this case.

## VI. Disposition.

On further review, we find that section 85.31(5), requiring a reduction in benefits for nonresident aliens, is neither unconstitutional nor does it conflict with section 85.51. We further find the commissioner erred when he allocated a portion of the benefits to Yolanda, the mother of Raul's Mexican children. Although the commissioner was correct when he allocated the death benefits equitably rather than equally, he also erred by considering the effects of the reduction contained in section 85.31(5) for nonresident aliens when he allocated the benefits. Consequently, we must vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case to the district court to reverse the judgment of the workers' compensation commissioner and remand the case to the commissioner to reallocate the benefits in a manner consistent with this decision.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**