# IN THE COURT OF APPEALS OF IOWA

No. 23-1626
Filed December 18, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ERIK MICHAEL MARKS,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Deborah Farmer Minot, Judge.

A defendant appeals his conviction for boating while intoxicated. **AFFIRMED.**

Alexander S. Momany of Howes Law Firm, PC, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., Buller, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**GAMBLE, Senior Judge.**

Erik Marks appeals his conviction for boating while intoxicated, challenging the sufficiency of the evidence and the court's denial of his motion for new trial. Finding the evidence supports his conviction and the district court did not abuse its discretion in denying his motion for trial, we affirm.

### I. Background Facts & Proceedings.

At just past noon on June 12, 2022, Marks and his fourteen-year-old son, K.M., went boating on Coralville Lake. Marks backed the boat into the water and, after parking his truck, started the boat, and drove the boat to their first stop. According to Marks, K.M. "normally drives after I take [the boat] off the boat ramp." Marks was the one responsible for placing and removing the sand spike at the beaches they visited that day, and K.M. piloted. While at the beaches, the motor was turned off. Marks and K.M. met up with family at the second beach around 5:00 p.m., but they waited more than an hour after their family left, waiting for the DNR boat on the lake to move out of sight. When leaving, Marks was on the beach, pulling the stake, pushing the boat into the water, then K.M. started the boat and began navigating while Marks hopped on the front to climb in. According to Marks, he did "not touch[ ] the helm, steering wheel or throttle on [his] boat" since getting it into the water at noon.

Sergeant Erika Billerbeck of the Department of Natural Resources (DNR) was on duty patrolling Coralville Reservoir the night of June 12 with water patrol officer Chase Gehrke. Around 9:15 p.m.—a little after sunset, they "saw a boat leave the Bohemie Beach area and move toward Sandy Beach boat ramp, and the boat had a flickering stern light." The DNR officers attempted to stop the boat, but

it continued moving.  They could see a figure, "but it was pretty dark" and they could not see who was driving.  The sergeant was wearing a body camera, and at one point she can be heard to ask, "Did they just switch?"  And Officer Gehrke answered: "yeah they switched."  But she then said, "Oh, no, he didn't."  As the DNR boat approached, they activated their siren and emergency lights and yelled, "Stop, stop the boat."  Sergeant Billerbeck heard a male yelling, "what?" and shouted again to stop the boat.  As they were closing in, she asked the other officer again, "Did they switch?" and he answered, "I think so."  She explained, "I thought I saw what would have been like the passenger switch spots, or at least move over to the driver's side."  When the DNR boat pulled up alongside Marks's boat, the officers could see two people on board behind the driver's seat.  Sergeant Billerbeck stated that "there was a younger boy there behind the steering console and then [Marks], I saw him reach over and adjust the throttle" to slow down the boat.  She said that "it just appeared there was movement in and out of that driver's console area" while the DNR boat was "still a ways out," and she reaffirmed she had a clear view of Marks moving the throttle after they had moved closer to Marks's boat.  Officer Gehrke testified he observed "Marks reach across, put his hand on the steering wheel, and pull the throttle back across toward his son."  He said the DNR boat was "roughly thirty yards" away when that happened, and they "could clearly see it."  According to Marks, when K.M. throttled down, he was "standing on the passenger side of the boat at the windshield"—a few feet from K.M.  K.M. testified he was trying to throttle down the boat when he noticed the sirens, but "it's hard to . . . you have to click in into place a couple times."  K.M.

said it was not possible for Marks to control the wheel or throttle from where he was standing, and he did not see his father touch either.

Sergeant Billerbeck noted she and Gehrke had seen Marks drinking on the beach earlier that day—Officer Gehrke identified the drink as beer—and Marks's speech was "slightly slurred" when they stopped the boat. Sergeant Billerbeck explained because of his age, K.M. needed a boater education certificate to operate the boat on his own, and because he did not have the card, he needed "to have somebody who is a responsible adult on board assisting" him.[1] *See* Iowa Code § 462A.12(6) (2022). Sergeant Billerbeck had Marks perform several field sobriety tests on the boat and then on shore, most of which showed at least some indication of impairment. The officers arrested Marks for boating while intoxicated. Under the affidavit section of the criminal complaint, Sergeant Billerbeck wrote, "[Marks's] fourteen-year-old son, who did not have the required certification to operate the boat without a responsible adult, was physically in control of the vessel and was supervised and under the direction of [Marks]." As she explained at trial, "they were both in physical control. They were both operators of that vessel, which is common in a boat to have more than one operator . . . . It's fairly common especially when it's a young person operator."

Marks was charged with boating while intoxicated, in violation of Iowa Code section 462A.14. Marks waived a jury, opting for a bench trial. The court found him guilty of boating while intoxicated, third offense. Marks filed a motion in arrest of judgment and motion for new trial, which the district court denied.

---

[1] K.M. obtained his certification within a week of the incident.

## II.  Standard of Review.

"We review the sufficiency of the evidence for correction of errors at law." *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) (citation omitted).  We look to if the evidence is "sufficient to convince a rational trier of fact" of the defendant's guilt, viewing the evidence "in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted).  Although Marks urges his sufficiency claim has a constitutional dimension based on the Due Process Clause, that claim appears based on a statutory interpretation question—which we also review for correction of errors at law.  *See State v. McCollaugh*, 5 N.W.3d 620, 623 (Iowa 2024).

"A district court should grant a motion for a new trial only in exceptional circumstances," and we review motions "asserting a verdict is contrary to the weight of the evidence for an abuse of discretion."  *State v. Ary*, 877 N.W.2d 686, 705–06 (Iowa 2016).  "An abuse of discretion occurs when it is shown that the district court 'exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'"  *State v. Liggins*, 978 N.W.2d 406, 432 (Iowa 2022) (citation omitted).  The weight-of-the-evidence standard differs from sufficiency-of-the-evidence by requiring the court to consider the credibility of witnesses, but the motion may only be granted if "more evidence supports the alternative verdict as opposed to the verdict rendered."  *Ary*, 877 N.W.2d at 706.  "The question for the court is not whether there was sufficient credible evidence to support the verdict rendered or an alternative verdict, but whether 'a greater amount of credible evidence' suggests the verdict rendered was

a miscarriage of justice." *Id.* (citation omitted). On our review, we look to whether the district court abused its discretion in applying the weight-of-the-evidence standard; we do not reach the underlying question whether the verdict is contrary to the weight of the evidence. *Id.* at 707.

### III. Analysis.

Marks asserts on appeal that the district court erred by finding the evidence supported a conviction of operating a motorboat while intoxicated under a sufficiency-of-the-evidence standard and as contrary to the weight of the evidence for his motion for new trial. The district court looked to model jury instructions to determine three elements to the offense: (1) Marks "operated" a motorboat on June 12, 2022, (2) on navigable waters, and (3) while under the influence of alcohol. Marks does not contest the navigable waters or intoxication elements—his argument focuses on whether he "operated" the boat within the meaning of the statute. *See* Iowa Code § 462A.14(1).

Iowa Code section 462A.2 provides the following relevant definitions:

> 24. "Operate" means to navigate or otherwise use a vessel or motorboat. For the purposes of [the relevant] section . . . , "operate", when used in reference to a motorboat, means the motorboat is powered by a motor which is running, and when used in reference to a sailboat, means the sailboat is either powered by a motor which is running, or the sailboat is under way and has sails hoisted and is not propelled by a motor.
> 25. "Operator" means a person who operates or is in actual physical control of a vessel.
> . . . .
> 39. "Use" means to operate, navigate, or employ a vessel. A vessel is in use whenever it is upon the water.

The Iowa Supreme Court has examined the definition of "operate," looking to both the statutory definition and the common meaning of its component words:

> [T]he legislature has defined the word "operate" to mean "to navigate or otherwise use a vessel or motorboat." Iowa Code § 462A.2(24). The common meaning of "navigate" is to "direct one's course through any medium." *Navigate*, *Webster's Third New International Dictionary* (unabr. ed. 2002). Were this the only legislative definition of the word "operate" appearing in chapter 462A, it would arguably support interpreting the statute narrowly as Pettijohn suggests.
>
> However, according to the definition of the term "operate" the legislature adopted, a person operates a boat when they navigate it "or otherwise use" it. Iowa Code § 462A.2(24). The common meaning of the word "otherwise" is "in a different way or manner." *Otherwise*, *Webster's Third New International Dictionary*. The common meaning of the word "use" is "to put into action or service." *Use*, *Webster's Third New International Dictionary.*

*State v. Pettijohn*, 899 N.W.2d 1, 16 (Iowa 2017) (concluding "operate" included "any time a person uses a boat"), *overruled in part on other grounds by State v. Kilby*, 961 N.W.2d 374, 378, 383 (Iowa 2021). We also observe the statutory definition of Operator includes two options (1) a person who operates the vessel, or (2) a person in actual physical control of a vessel—and a logical reading of this means to operate is not necessarily one and the same as to exercise physical control over the vessel. *See* Iowa Code § 462A.2(25); *see also Rojas v. Pine Ridge Farms, L.L.C.*, 779 N.W.2d 223, 231 (Iowa 2010) ("We . . . presume the legislature included all parts of the statute for a purpose, so we will avoid reading the statute in a way that would make any portion of it redundant or irrelevant.").

The district court considered the question of operation to be a close call with conflicting evidence. While K.M. was piloting the boat for the most part, he "was not operating the boat entirely on his own." The court found Marks was the one who put the boat in use on the water through backing the boat into the water via the trailer, planting and pulling sand spikes, and pushing the boat from beach to water. More, the court found Marks was in physical control of the boat when

pushing the boat on and off the beach and "when he took the wheel and throttled the boat down." The court expressly believed the officers testifying they saw Marks touch the throttle over Marks and K.M. who denied it, noting K.M. testified to knowing about the DNR boat and his trouble throttling down. And in ruling on Marks's motion for new trial, the court explained, "I conclude very firmly that the operation, the pulling of the throttle, which I found that the witnesses who testified to that were more credible than the defense witnesses, I am clear that that is operating."

Like the district court, we apply the definition of operate as set forth in *Pettijohn* and find sufficient evidence to find this element met. Putting aside the argument whether Marks's actions of removing sand spikes and pushing the boat off the beach constitute operation or physical control of the vessel within the meaning of section 462A.2(25), his act of throttling down the boat (as witnessed by both officers) with his hand on the wheel (as witnessed by Officer Gehrke) is more than enough evidence to establish navigation or use under section 462A.2(24) and actual physical control under section 462A.2(25). We give weight to the court's credibility findings and belief in the officers' testimony on Marks's operation of the throttle over the testimony of Marks and K.M. Considering all the evidence—under our standard of review in the light most favorable to the State—we find the evidence of Marks throttling down the boat was "sufficient to convince a rational trier of fact" Marks was "operating" the boat while intoxicated. *See Crawford*, 972 N.W.2d at 202.

As to the denial of his motion for new trial, Marks argues the district court applied the wrong standard when reviewing the evidence. But, as his own brief

illustrates when block-quoting the district court's ruling on the record, the district court rejected the incorrect standard asserted by Marks in his motion and applied the weight-of-the-evidence standard. The court carefully considered the legal question Marks raised and reexamined the evidence before denying the motion. Contrary to Marks's argument, we do not reach the underlying question of the weight of the evidence—we review the court's action. *Ary*, 877 N.W.2d at 707. And on our review, we discern no abuse of discretion in the district court's application of recent controlling precedent regarding the definition of operate for purposes of the statute nor in how the court applied the weight-of-the-evidence standard. For these reasons, we affirm.

**AFFIRMED.**